Electronically Filed
Supreme Court
SCWC-15-0000005
28-FEB-2017
08:06 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS
SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP,
Respondent/Plaintiff-Appellee,

vs.

GRISEL REYES-TOLEDO,
Petitioner/Defendant-Appellant,

and

WAI KALOI AT MAKAKILO COMMUNITY ASSOCIATION;
MAKAKILO COMMUNITY ASSOCIATION; and
PALEHUA COMMUNITY ASSOCIATION,
Respondents/Defendants-Appellees.

SCWC-15-0000005

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000005; CIVIL NO. 12-1-0668)

FEBRUARY 28, 2017

NAKAYAMA, ACTING C.J., McKENNA, POLLACK, AND WILSON, JJ., AND CIRCUIT
COURT JUDGE GARIBALDI, IN PLACE OF RECKTENWALD, C.J., RECUSED

OPINION OF THE COURT BY POLLACK, J.

This case raises issues of standing and appellate

jurisdiction that pertain to foreclosure proceedings.  We

consider whether a foreclosing plaintiff seeking summary judgment must prove it had standing to foreclose on the homeowner's property at the commencement of the lawsuit to be entitled to foreclosure of the subject property. We also determine the extent of appellate jurisdiction over interlocutory orders leading up to a foreclosure decree.

## I. BACKGROUND

The subject of the foreclosure proceedings is the home of Grisel Reyes-Toledo ("Homeowner"). On September 24, 2007, Homeowner executed a promissory note made payable to Countrywide Bank, FSB (the "Note"). The Note was secured by a mortgage on the property encumbering the property to mortgagee, Mortgage Electronic Registration Systems, Inc., as nominee for the lender, Countrywide Bank, FSB (the "Mortgage"). The Mortgage was recorded on September 28, 2007, in the Office of the Assistant Registrar of the Land Court of the State of Hawai'i.

In early 2011, Homeowner received a notice of intent to accelerate from BAC Home Loans Servicing, LP, a Bank of America company, dated January 7, 2011. The acceleration notice stated that BAC Home Loans Servicing, LP, services the loan on her property "on behalf of the holder of the promissory note" and that her loan was in serious default because required payments had not been made.

2

An assignment of the Mortgage from Mortgage Electronic Registration Systems, Inc., "solely as nominee for Countrywide Bank, FSB," to Bank of America, N.A., a National Association, as successor by merger to BAC Home Loans Servicing, LP, was recorded in the Office of the Assistant Registrar of the Land Court of the State of Hawai'i on October 19, 2011 (the "Assignment").  The Assignment was dated October 12, 2011.

On March 12, 2012, Bank of America, N.A., Successor by Merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing LP ("Bank of America"), filed a complaint in the Circuit Court of the First Circuit (the "circuit court") seeking to foreclose on Homeowner's property.  The complaint asserted that Bank of America was in possession of the Mortgage and Note and entitled to foreclosure of the Mortgage and sale of Homeowner's property.

Homeowner subsequently filed an answer and counterclaims on September 28, 2012, denying all allegations in the complaint except those relating to her personal background and the execution of the Note and Mortgage.  Homeowner asserted numerous defenses, including that Bank of America was not the holder of the Note and Mortgage and therefore not entitled to

foreclosure.[1]  Homeowner attacked the validity of the Assignment[2] and any negotiation of the Note.[3]  Homeowner also asserted additional defenses that would apply if the Note and Mortgage were transferred into a trust and securitized.[4]  Homeowner asserted four counterclaims: wrongful foreclosure, declaratory relief, quiet title, and unfair and deceptive trade practice.

Bank of America subsequently filed a motion to dismiss Homeowner's counterclaims, which was granted by the court in a February 12, 2013 order ("Order Granting Motion to Dismiss Counterclaims").  Homeowner filed a motion for reconsideration or certification for appeal, which the circuit court denied in a December 31, 2013 order ("Order Denying Motion for Reconsideration and Certification").

---

[1]  By extension, Homeowner raised fraud and illegality defenses based on her understanding that Bank of America was not entitled to enforce the Note and Mortgage.  Homeowner also claimed the following: the complaint failed to state a claim upon which relief could be granted; assumption of risk and contributory negligence; Bank of America was not the real party-in-interest; and Mortgage Electronic Services, Inc., could not be a lawful beneficiary of a mortgage if it lacked possession of the Note.

[2]  Homeowner maintained that there was "no valid interim assignment" of the Mortgage to Bank of America and that Mortgage Electronic Systems, Inc., "was nothing more than a strawman and a conduit for fraud."

[3]  Homeowner contended that there was no valid negotiation for value of the Note and that Bank of America was not a holder in due course.

[4]  Homeowner asserted violations of the terms of the trust, the Internal Revenue Code, New York trust law, and the Pooling and Service Agreement.  Homeowner also asserted that the "purported assignment may have been performed by robo-signers" and was therefore fraudulent and void; that the "promissory note and mortgage may never have been deposited or transferred into the trust"; and that "the signatures may have been by unauthorized persons and, therefore, are void as forgeries."

Bank of America moved for summary judgment and an interlocutory decree of foreclosure, asserting that it was entitled to judgment as a matter of law. Bank of America maintained that, in order to obtain summary judgment, it was required to prove the existence of an agreement, the terms of the agreement, default, and the giving of the requisite notice. Bank of America contended that no genuine issue as to any material fact existed because the declarations and exhibits attached to its motion demonstrated the existence of the Mortgage and Note, the terms of the Mortgage and Note, Homeowner's default, and the giving of the requisite notice to Homeowner.

The attachments to Bank of America's motion for summary judgment included a "Declaration of Indebtedness" by Katherine M. Egan, an officer of Bank of America ("Egan Declaration"). The Egan Declaration was dated January 27, 2014, and it stated that Bank of America "has possession" of the Note and that the Note "has been duly endorsed to blank." Also attached was a copy of the Note that was signed by Homeowner, which identified Countrywide Bank, FSB, as the lender. The Note included two stamps with undated signatures that read as follows:

> PAY TO THE ORDER OF
>
> WITHOUT RECOURSE
> COUNTRYWIDE HOME LOANS, INC.

```
                    BY: [signature Michele Sjolander]
                    MICHELE SJOLANDER
                    EXECUTIVE VICE PRESIDENT

                    ******

                    PAY TO THE ORDER OF
                    COUNTRYWIDE HOME LOANS, INC
                    WITHOUT RECOURSE
                    COUNTRYWIDE BANK, FSB
                    BY: [signature Laurie Meder]
                    LAURIE MEDER
                    Senior Vice President
```

The attachments to the motion also included a copy of the Mortgage, a copy of the Assignment, a copy of the January 7, 2011 notice of intent to accelerate, and payment records for Homeowner's loan account.

In opposition to Bank of America's motion for summary judgment, Homeowner asserted that material questions of fact remained as to the validity of the Assignment and whether Bank of America was the lawful holder of the Note. Homeowner argued that she did "not have to prove who owns the note and mortgage" and that it was Bank of America's burden "to prove by a preponderance of the evidence that it owns the note and mortgage." Homeowner contended that the evidence produced by Bank of America was insufficient as there was no evidence of the date of the transfer of the Note. Homeowner also asserted that the motion for summary judgment should be denied because discovery was ongoing, or alternatively, that the circuit court should continue the hearing pending the completion of discovery.

The circuit court granted Bank of America's motion for summary judgment, entering its December 9, 2014 "Findings of Fact, Conclusions of Law, Order Granting Plaintiffs Motion for Summary Judgment Against All Parties and for Interlocutory Decree of Foreclosure Filed April 4, 2014" ("Foreclosure Decree"). The court found that Bank of America was the "current holder" of the Note and Mortgage.[5] The court concluded that Bank of America was entitled to foreclosure of the Mortgage and sale of the property. The Foreclosure Decree also provided that it was "entered as a final judgment pursuant to Rule 54(b) of the Hawaiʻi Rules of Civil Procedure (HRCP) as there was no just reason for delay." The court also entered a separate judgment on December 9, 2014, directing that the Foreclosure Decree was entered "as a final judgment in favor of Plaintiff and against all Defendants as there [was] no just reason for delay pursuant to [HRCP] Rule 54(b)" (the "Judgment").

Homeowner timely filed a notice of appeal from the Judgment.[6] On appeal to the Intermediate Court of Appeals (ICA),

---

[5] The court found, "Plaintiff is the current holder of the Note and Mortgage by an Assignment of Mortgage ('Assignment') recorded on October 19, 2011 in the Office of the Assistant Registrar of the Land Court of the State of Hawaii as Document No. 4105159 and noted on Transfer Certificate of Title No. 878,760."

[6] Prior to filing her notice of appeal, Homeowner moved for a stay of the Foreclosure Decree and cancellation of the sale of the property. In her supporting memorandum, Homeowner requested that the circuit court "stay the summary judgment order and the judgment, cancel any proposed sale, and

(continued . . .)

7

Homeowner asserted that the circuit court erred in holding that Bank of America had standing to bring the foreclosure action, in granting summary judgment to Bank of America, in dismissing her counterclaims, and in denying her motion for reconsideration of the dismissal of her counterclaims.

In a summary disposition order, the ICA affirmed the circuit court's Judgment. The ICA's decision first addressed Homeowner's assertion that Bank of America lacked standing to foreclose. With regard to Bank of America's standing to enforce the Note, the ICA concluded that Bank of America produced sufficient evidence to establish its authority to enforce the Note.[7] The ICA reasoned that Bank of America "provided evidence that it was in possession of the Note, the blank endorsement

permit [Homeowner's] house to act as collateral for the supersedeas bond." It does not appear from the record that the circuit court resolved Homeowner's motion for a stay prior to the filing of the notice of appeal.

Homeowner also moved for a stay in the ICA requesting that the ICA stay the Foreclosure Decree, cancel the sale of the property, and allow the property to act as a supersedeas bond. The ICA granted the motion in part on the condition that, within twenty days, Homeowner submit to the circuit court for approval a supersedeas bond issued by a licensed surety in the amount of $300,000.

[7] The ICA also concluded that Homeowner's arguments with respect to the validity of the Assignment were without merit. With respect to Homeowner's assertion that any transfers of the Note and Mortgage were void and in violation of the rules of the trust, the ICA noted that Homeowner failed "to cite to the record or any evidence to support her assertion that the Note and Mortgage were in a trust that dissolved, or that the transfers were based on forged documents," and the ICA concluded that Homeowner thus "failed to demonstrate that the assignment of the Note and Mortgage was void." Finally, the ICA determined that Homeowner failed to establish that she was entitled to a continuance to complete discovery pursuant to HRCP Rule 56(f).

established that [Bank of America] was the 'holder' of the Note, and the Egan Declaration stated that the Note was a true and correct copy of the Note in [Bank of America's] possession."

The ICA also considered whether it had appellate jurisdiction over Homeowner's challenge to the Order Granting Motion to Dismiss Counterclaims and Order Denying Motion for Reconsideration and Certification. The ICA concluded that it did not have jurisdiction over these orders as they were not final appealable orders and had not been reduced to a final appealable judgment. The ICA reasoned that it had jurisdiction over the appeal of the Judgment on the Foreclosure Decree as a final and appealable order under Hawaii Revised Statutes (HRS) § 667-51(a)(1) but that HRS § 667-51 did not provide appellate jurisdiction over the orders regarding the counterclaims. Thus, the ICA affirmed the circuit court Judgment.

Homeowner filed an application for writ of certiorari with this court, which was granted.

**II. DISCUSSION**

There are two primary issues presented in Homeowner's application to this court.[8] The first issue is whether the ICA

---

[8] Homeowner presents four questions on certiorari to this court: (1) whether the ICA erred in affirming the circuit court's grant of summary judgment to Bank of America; (2) whether the ICA erred in affirming the dismissal of her counterclaims; (3) whether the ICA erred in affirming the circuit court's denial of her motion for reconsideration of the dismissal of

(continued . . .)

erred in affirming the circuit court's grant of summary judgment in favor of Bank of America.  The second issue is whether the appellate courts have jurisdiction to review the circuit court's Order Granting Motion to Dismiss Counterclaims and related Order Denying the Motion for Reconsideration and Certification under HRCP Rule 54(b), which were issued prior to the Judgment.

### A. Summary Judgment

Homeowner argues that the ICA erred in affirming the circuit court's grant of summary judgment in favor of Bank of America "where the evidence proved" that Bank of America did not own or hold the Mortgage and Note by valid assignment.[9] Homeowner asserts that she "does not have to prove who owns the note and mortgage" and that Bank of America "had to prove by a preponderance of the evidence that it owns the note and

---

her counterclaims and HRCP Rule 54(b) request for certification; and (4) whether the ICA erred in affirming the denial of her request "to use her home as the supersedeas bond."

[9] "We review the circuit court's grant or denial of summary judgment de novo." Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005).  The court views all the evidence and inferences in the light most favorable to the party opposing the motion. Durette v. Aloha Plastic Recycling, Inc., 105 Hawai'i 490, 501, 100 P.3d 60, 71 (2004).  The moving party bears the burden of demonstrating that there is no genuine issue as to any material fact with respect to the essential elements of the claim or defense and must prove that the moving party is entitled to judgment as a matter of law. French v. Haw. Pizza Hut, Inc., 105 Hawai'i 462, 470, 99 P.3d 1046, 1054 (2004).  "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." Durette, 105 Hawai'i at 501, 100 P.3d at 71 (quoting Haw. Cmy. Fed. Credit Union v. Keka, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000)).

mortgage."  In both her application for writ of certiorari and her opening brief to the ICA, Homeowner argued that there was no evidence regarding the date of the transfer of the Note.  The ICA determined that Bank of America sufficiently evidenced its authority to enforce the Note because the blank endorsement of the Note established that Bank of America was the holder.

In order to prove entitlement to foreclose, the foreclosing party must demonstrate that all conditions precedent to foreclosure under the note and mortgage are satisfied and that all steps required by statute have been strictly complied with.  See 55 Am. Jur. 2d Mortgages § 575 (Nov. 2016 Update). This typically requires the plaintiff to prove the existence of an agreement, the terms of the agreement, a default by the mortgagor under the terms of the agreement, and giving of the cancellation notice.  See Bank of Honolulu, N.A. v. Anderson, 3 Haw. App. 545, 551, 654 P.2d 1370, 1375 (1982) (citing 55 Am. Jur. 2d Mortgages § 554 (1971)).  A foreclosing plaintiff must also prove its entitlement to enforce the note and mortgage. HRS § 490:3-301 (providing who is entitled to enforce an instrument); see id. § 490:3-308 (concerning proof of signatures and status as a holder in due course); id. cmt. 2 (noting that "[i]f a plaintiff producing the instrument proves entitlement to enforce the instrument, either as a holder or a person with

11

rights of a holder, the plaintiff is entitled to recovery unless the defendant proves a defense or claim in recoupment").[10]

A foreclosing plaintiff's burden to prove entitlement to enforce the note overlaps with the requirements of standing in foreclosure actions as "[s]tanding is concerned with whether the parties have the right to bring suit." Mottl v. Miyahira, 95 Hawai'i 381, 388, 23 P.3d 716, 723 (2001). Typically, a plaintiff does not have standing to invoke the jurisdiction of the court unless the plaintiff has suffered an injury in fact. Id. at 391, 23 P.3d at 726.[11] A mortgage is a conveyance of an interest in real property that is given as security for the payment of the note. HRS § 490:9-102 (defining "mortgage"). A foreclosure action is a legal proceeding to gain title or force a sale of the property for satisfaction of a note that is in default and secured by a lien on the subject property. HRS § 667-1.5 (providing for foreclosure by action); id. § 490:9-601(a) (providing that after default, a secured party "[m]ay

---

[10]    See also Bank of Am., N.A. v. Hermano, 138 Hawai'i 140, 377 P.3d 1058 (App. 2016) (SDO) (interpreting HRS § 490:3-301 to require that plaintiff establish that it is the holder of, or otherwise entitled to enforce, the promissory note and mortgage in order to be entitled to summary judgment in a foreclosure action).

[11]    The standing inquiry involves consideration of whether the plaintiff suffered an actual or threatened injury as a result of the defendant's conduct; whether the injury is traceable to the challenged action; and whether the injury is likely to be remedied by a favorable judicial decision. Mottl, 95 Hawai'i at 391, 23 P.3d at 726.

12

reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure"). See generally 55 Am. Jur. 2d Mortgages § 573 (Nov. 2016 Update) (discussing the nature and purpose of a foreclosure suit). Thus, the underlying "injury in fact" to a foreclosing plaintiff is the mortgagee's failure to satisfy its obligation to pay the debt obligation to the note holder. Accordingly, in establishing standing, a foreclosing plaintiff must necessarily prove its entitlement to enforce the note as it is the default on the note that gives rise to the action. See HRS § 490:9-601 (providing for a secured party's rights after default).

"It is well settled that the crucial inquiry with regard to standing is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his or her invocation of the court's jurisdiction and to justify exercise of the court's remedial powers on his or her behalf." Mottl, 95 Hawai'i at 389, 23 P.3d at 724 (quoting Akinaka v. Disciplinary Bd. of Haw. Supreme Ct., 91 Hawai'i 51, 55, 979 P.2d 1077, 1081 (1999)). As standing relates to the invocation of the court's jurisdiction, it is not surprising that standing must be present at the commencement of the case. Sierra Club v. Haw. Tourism Auth., 100 Hawai'i 242, 257, 59 P.3d 877, 892 (2002) (noting that "standing must be established at the beginning of

the case"). Accordingly, a foreclosing plaintiff does not have standing to foreclose on mortgaged property unless the plaintiff was entitled to enforce the note that has been defaulted on. See Hanalei, BRC Inc. v. Porter, 7 Haw. App. 304, 310, 760 P.2d 676, 680 (1988) (noting that "an action cannot be maintained if it is prematurely commenced" before the plaintiff is entitled to enforce the instrument).[12]

The principle that a foreclosing plaintiff must establish entitlement to enforce the note at the time the action was commenced has been recognized in several other jurisdictions. See, e.g., U.S. Bank, N.A. v. Ugrin, 91 A.3d 924, 930 (Conn. App. Ct. 2014) ("Generally, in order to have standing to bring a foreclosure action the plaintiff must, at the time the action is commenced, be entitled to enforce the promissory note that is secured by the property."); McLean v. JP Morgan Chase Bank Nat. Ass'n, 79 So. 3d 170, 173 (Fla. Dist. Ct. App. 2012) ("A crucial element in any mortgage foreclosure proceeding is that the party seeking foreclosure must demonstrate that it has standing to foreclose."); Deutsche Bank Nat. Trust Co. v. Johnston, 369 P.3d 1046, 1052 (N.M. 2016)

---

[12] It is noted that the Porter case allowed for the curing of the premature commencement by the filing of an amended complaint after the plaintiff came into possession of the instrument. We note that this case does not present the issue of whether an amended complaint will cure the premature filing of a foreclosure action, and therefore we do not address this aspect of the Porter case.

(holding that "standing must be established as of the time of filing suit in mortgage foreclosure cases"); U.S. Bank, N.A. v. Collymore, 890 N.Y.S.2d 578, 580 (N.Y. App. Div. 2009) (noting that "the plaintiff must prove its standing in order to be entitled to relief" and that, "[i]n a mortgage foreclosure action, a plaintiff has standing where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced"); Bank of N.Y. Mellon v. Grund, 27 N.E.3d 555, 559 (Ohio Ct. App. 2015) (noting that, in a mortgage foreclosure action, the mortgage lender must establish an interest in the promissory note or the mortgage "as of the filing of the complaint" (citing Fed. Home Loan Mortg. Corp. v. Schwartzwald, 979 N.E.2d 1214, 1219 (Ohio 2012))); Deutsche Bank Nat. Trust v. Brumbaugh, 270 P.3d 151, 154 (Okla. 2012) ("Being a person entitled to enforce the note is an essential requirement to initiate a foreclosure lawsuit. In the present case, there is a question of fact as to when Appellee became a holder, and thus, a person entitled to enforce the note. Therefore, summary judgment is not appropriate."); U.S. Bank Nat. Ass'n v. Kimball, 27 A.3d 1087, 1092 (Vt. 2011) (affirming the circuit court's granting of summary judgment for the homeowner where the bank could not prove it was the holder of the note).

The requirement that a foreclosing plaintiff prove its entitlement to enforce the note at the commencement of the proceedings "provides strong and necessary incentives to help ensure that a note holder will not proceed with a foreclosure action before confirming that it has a right to do so." Deutsche Bank Nat. Trust Co. v. Johnston, 369 P.3d 1046, 1052 (N.M. 2016); see Porter, 7 Haw. App. at 308, 760 P.2d at 679 (noting that the general requirement that a holder be in possession of the instrument is meant "to protect the maker or drawer from multiple liability on the same instrument"). The Supreme Court of New Mexico recently observed that "[t]his procedural safeguard is vital because the securitization of mortgages has given rise to a pervasive failure among mortgage holders to comply with the technical requirements underlying the transfer of promissory notes and, more generally the recording of interests in property."[13] Johnston, 369 P.3d at 1053. Indeed, scholars have commented on the widespread documentation problems that are associated with modern mortgage securitization practices.[14] It appears that "[u]nder these circumstances, not

---

[13] See, e.g., Wells Fargo Bank, N.A. v. Marchione, 887 N.Y.S.2d 615, 617 (N.Y. App. Div. 2009) (foreclosing bank claimed standing based on an assignment of the relevant mortgage and note that was executed after the commencement of the action).

[14] See, e.g., Shaun Barnes et al., In-House Counsel's Role in the Structuring of Mortgage-Backed Securities, 2012 Wis. L. Rev. 521, 528 (2012) ("Unfortunately, over the years procedural standards in mortgage

(continued . . .)

even the plaintiffs may be sure if they actually own the notes they seek to enforce." Id. at 1052. Basic requirements of Hawaii's Uniform Commercial Code and our law on standing should not be modified, especially in light of the widespread problems created by the securitization of mortgages, because a requirement that seems to be merely technical in nature may serve an essential purpose. For example, the possession requirement, which applies unless a specific statutory exception exists, protects the maker of an instrument from multiple enforcements of the same instrument. See Porter, 7 Haw. App. at 308, 760 P.2d at 679.

---

securitizations appear to have deteriorated along with loan-underwriting standards. As a result, in some, if not many or most, cases, notes were neither indorsed nor delivered to the [special purpose vehicle] or its agent in accordance with the delivery instructions. Moreover, it appears that mortgage loan servicers seeking to enforce notes on behalf of the [special purpose vehicle] did not always bother to take physical possession of the notes in accordance with state law."); Elizabeth Renuart, Uneasy Intersections: The Right to Foreclose and the U.C.C., 48 Wake Forest L. Rev. 1205, 1209-10 (2013) ("The evidence reveals the failure to deliver the original notes with proper indorsements to the trustee or its document custodian, the routine creation of unnecessary lost note affidavits, the destruction of the original notes, and the falsification of necessary indorsements."); Alan M. White, Losing the Paper - Mortgage Assignments, Note Transfers and Consumer Protection, 24 Loy. Consumer L. Rev. 468, 475 (2012) ("Much anecdotal evidence suggests that servicers of private-label securitized mortgages either delivered original notes without endorsements to document custodians for the trust, routinely prepared lost note affidavits in lieu of delivering notes to foreclosure attorneys and trustees, routinely destroyed original notes, and/or obtained or forged necessary endorsements long after the transfers were supposed to have taken place." (footnotes omitted)).

Whether a party is entitled to enforce a promissory note is determined by application of HRS § 490:3-301 (2008), which provides the following:

> "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 490:3-309 or 490:3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

Bank of America has maintained that it was the holder of the Note based on the Egan Declaration and the blank indorsement on the Note. Accordingly, we consider whether the Bank produced sufficient evidence to demonstrate that it was entitled to enforce the Note as a holder of the instrument at the time that the foreclosure proceedings were commenced.[15]

---

[15] A "holder in due course" is defined as follows:

> Subject to subsection and section 490:3-106(d), "holder in due course" means the holder of an instrument if:
>
> (1) The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and
>
> (2) The holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in section 490:3-306, and (vi) without notice that any party has a defense or claim in recoupment described in section 490:3-305(a).

HRS § 490:3-302(a) (2008).

The negotiation asserted by Bank of America involved negotiation by blank indorsement and transfer of possession of the Note. In contrast, a special indorsement occurs if the indorsement is made by the holder of an instrument and the indorsement identifies a person to whom it makes the instrument payable. HRS § 490:3-205(a). When an instrument is specially indorsed, it becomes payable to the identified person and may be negotiated only by the indorsement of that person. Id. A blank indorsement occurs when an indorsement is made by the holder of an instrument and is not a special indorsement; in other words, a blank indorsement is not payable to an identified person. Id. § 490:3-205(b). When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer or possession alone until specially indorsed. Id.

Here, the Note, which was attached to Bank of America's motion for summary judgment as Exhibit A, contains two indorsements. One indorsement is a special indorsement by Countrywide Bank, FSB, to Countrywide Home Loans, Inc. See HRS § 490:3-205(a). The other is a blank indorsement by Countrywide Home Loans, Inc. See id. § 490:3-205(b). Thus, because the Note was last negotiated by a blank indorsement, it may be negotiated by transfer of possession.

Although Bank of America produced evidence that it possessed the blank-indorsed Note at the time it sought summary

19

judgment, a material question of fact exists as to whether Bank of America possessed the Note, or was otherwise a holder, at the time it brought the foreclosure action. Indeed, the copy of the Note attached to the summary judgment motion does not reflect the date of the blank indorsement, and the Egan Declaration, which was made after the filing of the complaint in this case, does not indicate when the indorsement occurred. Further, there is no additional evidence in the record regarding the date of the indorsements or whether Bank of America possessed the Note at the time of the filing of the complaint. Thus, there is a material question of fact as to whether Bank of America was the holder of the Note at the time the foreclosure proceedings were commenced, which in turn raises the issue of whether Bank of America had standing to foreclose on the Property at the time it brought the foreclosure action.[16]

Both the ICA and the circuit court appear to have determined that Bank of America was entitled to enforce the Note as the holder at the time Bank of America moved for summary judgment. As the moving party, it was Bank of America's burden to demonstrate there was no genuine issue as to any material

_____

[16] It is noted that Bank of America may also demonstrate its standing by establishing that at the commencement of the suit it was either a nonholder in possession of the instrument with the rights of a holder or a person not in possession of the instrument who was entitled to enforce the instrument pursuant to HRS §§ 490:3-309 or 490:3-418(d). See HRS § 490:3-301.

fact with respect to the essential elements of a foreclosure action.  See French v. Haw. Pizza Hut, Inc., 105 Hawai'i 462, 470, 99 P.3d 1046, 1054 (2004).  Here, there is no evidence in the record, either through the Note itself, the Egan Declaration, or the other documents attached to the motion for summary judgment, showing that the blank indorsement on the Note occurred prior to the initiation of the suit.[17]  Consequently, there is a genuine issue as to whether Bank of America was entitled to foreclose when it commenced the proceeding.  Thus, viewing the facts and inferences in the light most favorable to Homeowner, there is a genuine issue of material fact as to whether Bank of America held the Note at the time it filed the complaint.  Accordingly, Bank of America failed to meet its burden of demonstrating that it was entitled to judgment as a matter of law, and the circuit court erred in granting Bank of

---

[17]  An assignment of the Mortgage to Bank of America prior to the commencement of the action would not be sufficient to establish standing as an injury to the plaintiff in a foreclosure proceeding, which is premised on the default under the note.  Although the security follows the debt, the debt does not automatically follow the security.  See HRS § 490:9-203(g) & cmt. 9 (2008) (codifying the common law rule that a transfer of an obligation secured by a security interest or other lien on personal or real property also transfers the security interest or lien); see also, e.g., Vega v. CTX Mortg. Co., LLC, 761 F. Supp. 2d 1095, 1097 (D. Nev. 2011) ("The Traditional Rule is that the mortgage or deed of trust (the security instrument) automatically follows the secured debt, but not vice versa."); Restatement (Third) of Property (Mortgages) § 5.4(c) (1997) ("A mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation the mortgage secures.").

21

America's motion for summary judgment.[18]  In light of this
ruling, we need not address Homeowner's arguments with respect
to whether the Mortgage was validly assigned to Bank of America.

### B. Appellate Jurisdiction Over the Circuit Court Orders Concerning Dismissal of the Counterclaims

Homeowner also argues on certiorari to this court that
the ICA erred in holding that it lacked jurisdiction to review
the dismissal of her counterclaims.  The ICA determined that,
although it had jurisdiction over the Judgment and Foreclosure
Decree, it did not have jurisdiction over the Order Granting
Motion to Dismiss Counterclaims or the Order Denying Motion for
Reconsideration and Certification.  For the reasons discussed
below, we conclude that the circuit court's Judgment was a final
appealable judgment, and thus, there is appellate jurisdiction
over all interlocutory orders leading up to the Judgment in this
case, including the court's two orders concerning the dismissal
of Homeowner's counterclaims.

HRS § 641-1(a)[19] provides for appeals as of right in
civil cases from final judgments, orders, or decrees of circuit

---

[18]     It is noted that this decision does not modify notice pleading
standards.  See Johnston, 369 P.3d at 1055 (explaining that in foreclosure
cases a foreclosing plaintiff satisfies notice pleading requirements by
simply alleging that it is the holder of the note without attaching any
additional documentary evidence).

[19]     HRS § 641-1(a) (Supp. 2012) provides, "Appeals shall be allowed
in civil matters from all final judgments, orders, or decrees of circuit and

(continued . . .)

and district courts.  Thus, a party typically does not have a right to appeal unless there is entry of a final judgment.  See Jenkins v. Cades Schutte Fleming & Wright, 76 Hawai‘i 115, 118, 869 P.2d 1334, 1337 (1994) (requiring entry of final judgment on a separate document even where orders purport to be final).  However, in foreclosure cases, appellate jurisdiction over appeals is further defined by HRS § 667-51, which provides for appellate jurisdiction over a judgment on a decree of foreclosure.

HRS § 667-51(a) provides the following with regard to appeals in foreclosure actions:

> Without limiting the class of orders not specified in section 641-1 from which appeals may also be taken, the following orders entered in a foreclosure case shall be final and appealable:
>
> (1) A judgment entered on a decree of foreclosure, and if the judgment incorporates an order of sale or an adjudication of a movant's right to a deficiency judgment, or both, then the order of sale or the adjudication of liability for the deficiency judgment also shall be deemed final and appealable;
>
> (2) A judgment entered on an order confirming the sale of the foreclosed property, if the circuit court expressly finds that no just reason for delay exists, and certifies the judgment as final pursuant to rule 54(b) of the Hawaii rules of civil procedure; and
>
> (3) A deficiency judgment; provided that no appeal from a deficiency judgment shall raise issues relating to the judgment debtor's liability for the deficiency judgment (as opposed to the amount of the deficiency judgment), nor shall the appeal affect the finality of the transfer of

---

district courts and the land court to the intermediate appellate court, subject to chapter 602."

> title to the foreclosed property pursuant to the order
> confirming sale.

HRS § 667-51 (Supp. 2004) (emphases added).  Under HRS § 667-51,

foreclosure cases are bifurcated into two separately appealable

parts: (1) the decree of foreclosure and order of sale

appealable pursuant to HRS § 667-51(a)(1) and (2) all other

orders that "fall within the second part of the bifurcated

proceedings."[20]  Mortg. Elec. Registration Sys., Inc. v. Wise,

130 Hawai'i 11, 16, 304 P.3d 1192, 1197 (2013).  This is

consistent with the court's well-established holding that a

decree of foreclosure "finally determines the merits of the

controversy."  Id. (quoting MDG Supply, Inc. v. Diversified

Invs., Inc., 51 Haw. 375, 380, 463 P.2d 525, 528 (1969)).

In this case, the circuit court entered its Judgment

on the Foreclosure Decree.  As a judgment entered on a decree of

foreclosure, it is "final" and "appealable," HRS § 667-51(a),

and thus it is a final judgment under HRS § 641-1.  Because the

---

[20]     Orders confirming sale, deficiency judgments, orders directing
the distribution of proceeds, and other orders issued subsequent to the
decree of foreclosure are separately appealable pursuant to HRS § 667-
51(a)(2)-(3) and therefore "fall within the second part of the bifurcated
proceedings."  Mortg. Elec. Registration Sys., Inc. v. Wise, 130 Hawai'i 11,
16, 304 P.3d 1192, 1197 (2013); see also Sec. Pac. Mortg. Corp. v. Miller, 71
Haw. 65, 70, 783 P.2d 855, 858 (1989) (treating an appeal from an order
confirming sale and for deficiency judgment as separate from an appeal from
the decree of foreclosure); E. Sav. Bank, FSB v. Esteban, 129 Hawai'i 154, 296
P.3d 1062 (2013) (treating an appeal from the judgment confirming the
foreclosure sale as a separate matter from the judgment of foreclosure).

24

Judgment was final and complied with HRCP Rule 58,[21] the ICA had jurisdiction over the circuit court's Judgment.

As an appeal from a final judgment, Homeowner's appeal from the circuit court's Judgment brought up for review "all interlocutory orders not appealable directly as of right which deal with issues in the case."  See Ueoka v. Szymanski, 107 Hawai'i 386, 396, 114 P.3d 892, 902 (2005) (quoting Pioneer Mill Co. v. Ward, 34 Haw. 686, 694 (1938)); see also Lussier v. Mau-Van Dev., Inc., 4 Haw. App. 359, 395-96, 667 P.2d 804, 827 (1983) ("It is well-settled that an appeal from a final judgment brings up for appellate review all interlocutory orders dealing with issues in the case not appealable directly as of right."). The circuit court's orders concerning the dismissal of Homeowner's counterclaims were both issued prior to the Foreclosure Decree and concerned issues involving the foreclosure in this case.  Thus, Homeowner's appeal of the circuit court's Judgment to the ICA brought up for review the circuit court's Order Granting Motion to Dismiss Counterclaims and Order Denying Motion for Reconsideration and Certification,

---

[21]     HRCP Rule 58 (2010), provides in relevant part, "Every judgment shall be set forth on a separate document."

in addition to the Foreclosure Decree.[22] See Ueoka v. Szymanski, 107 Hawai'i at 396, 114 P.3d at 902.

The circuit court's description of its Foreclosure Decree as interlocutory, and the Judgment's explanation that it was "entered as a final judgment . . . as there is no just reason for delay" has no bearing on whether the court's Judgment is a final, appealable judgment in this case.[23] See Sec. Pac. Mortg. Corp. v. Miller, 71 Haw. 65, 67 n.1, 783 P.2d 855, 856 n.1 (1989) (stating that the use of the term "interlocutory" has no bearing on the finality of the order). Thus, a judgment

---

[22] This conclusion logically follows well-settled law addressing the scope of issues that may be raised on appeal from a foreclosure decree and from an order confirming the foreclosure sale. Issues that are not "unique" to the confirmation of sale must be raised with respect to the foreclosure decree. See, e.g., Wise, 130 Hawai'i at 17-18, 304 P.2d at 1198-99 (concluding that mortgagors were precluded from challenging nominee's standing to bring foreclosure action in an appeal from an order confirming the foreclosure sale). None of the counterclaims would be considered "unique" to the confirmation of sale, and, thus, they must be addressed simultaneously with the foreclosure decree. See id. at 17, 304 P.2d at 1198 ("[W]here an appellant challenges the right of a party to obtain a deficiency judgment in a foreclosure case, he must take his appeal in a timely fashion from the order which finally determined the right to a deficiency, i.e., the order granting summary judgment." (internal quotation marks omitted) (quoting Miller, 71 Haw. at 71, 783 P.2d at 858)).

[23] It appears that the characterization of the Foreclosure Decree as an "interlocutory decree" stems from Bank of America's motion for summary judgment, which requested that "Pursuant to Rule 54(b) of the HRCP, Plaintiff moves for a determination and direction that there is no just reason for the delay in entry of Judgment and Decree of Foreclosure as a final judgment." HRCP Rule 54(b) provides that, when there are multiple claims for relief presented in an action, the court may "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." It was unnecessary for Bank of America to request a judgment pursuant to HRCP Rule 54(b) because the decree of foreclosure is a final appealable order as discussed above.

reflecting that it is entered in accordance with HRCP Rule 54(b)[24] is not dispositive of whether the Judgment is itself a final, appealable judgment that would allow review of other interlocutory orders.

Accordingly, for the reasons discussed above, the ICA erred in its determination that it did not have jurisdiction over the circuit court's Order Granting Motion to Dismiss Counterclaims or the Order Denying Motion for Reconsideration and Certification.  Given that the ICA did not reach the merits of Homeowner's appeal with respect to the dismissal of her counterclaims, we remand the case to the ICA to address the merits of Homeowner's appeal of the dismissal of her counterclaims.[25]

### III. CONCLUSION

For the reasons discussed, the ICA's April 13, 2016 judgment on appeal is vacated.  The circuit court's December 9,

---

[24]    HRCP Rule 54(b) (2000), provides in relevant part:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

[25]    We need not consider Homeowner's arguments regarding her motion for stay and request to allow her home to act as supersedeas bond in light of our disposition of the case.

27

2014 Judgment is also vacated to the extent it grants summary judgment to Bank of America.  The case is remanded to the ICA for a determination of whether the circuit court erred in dismissing Homeowner's counterclaims.

R. Steven Geshell
for petitioner

Jade Lynne Ching,
J. Blaine Rogers and
Kee M. Campbell
for respondents

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

/s/ Colette Y. Garibaldi

