NOT FOR PUBLICATION  IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000746
20-JUL-2020
08:02 AM

NO. CAAP-17-0000746

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9
MASTER PARTICIPATION Trust, Plaintiff-Appellee,
v.
PATRICK LOWELL VERHAGEN; PATRICK LOWELL VERHAGEN,
TRUSTEE OF THE PATRICK LOWELL VERHAGEN REVOCABLE
TRUST DATED OCTOBER 29, 1999, Defendants-Appellants,
and
WELLS FARGO BANK, N.A., Defendant-Appellee,
and
DOES 1 THROUGH 20, INCLUSIVE, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 16-1-0147(1))


SUMMARY DISPOSITION ORDER
(By:  Ginoza, Chief Judge, Chan and Hiraoka, JJ.)

Defendant-Appellant Patrick Lowell Verhagen
and Patrick Lowell Verhagen, Trustee of the Patrick Lowell
Verhagen Revocable Trust Dated October 29, 1999 (collectively
**Verhagen**) appeal from the Judgment entered on September 25, 2017,
by the Circuit Court of the Second Circuit (**Circuit Court**).[1]  The
Judgment was entered pursuant to the Circuit Court's "Findings of
Fact and Conclusions of Law; Order Granting Plaintiff's Motion
for Summary Judgment and for Interlocutory Decree of Foreclosure
Filed January 31, 2017" (**Summary Judgment Order**) also entered on
September 25, 2017.

---

[1]    The Honorable Rhonda I.L. Loo presided.

On appeal, Verhagen argues the Circuit Court erred in granting summary judgment in favor of Plaintiff-Appellee U.S. Bank Trust, N.A., as Trustee for LFS9 Master Participation Trust (**U.S. Bank**), when there were genuine issues of material fact as to whether U.S. Bank had standing to bring a foreclosure action against Verhagen.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant legal authorities, we resolve Verhagen's points of error as follows, and we vacate and remand.

## I.  Background

In its "Verified Complaint to Foreclose Mortgage" filed on March 23, 2016 (**Verified Complaint**), U.S. Bank alleged that Patrick Verhagen executed and delivered an Adjustable Rate Note (**Note**) dated September 24, 2007, to original lender Washington Mutual Bank, F.A. (**Washington Mutual**).  The Verified Complaint further asserted that "[U.S. Bank] is the current holder of the Note with standing to prosecute the instant action by virtue of the blank indorsement to the Note, which thereby converted the Note to a bearer instrument, and because [U.S. Bank] is in possession of the indorsed in blank Note."  The Verified Complaint also asserted that the Note was secured by a Mortgage, dated September 24, 2007, in favor of Washington Mutual, and that the Mortgage was subsequently assigned to JP Morgan Chase Bank (**JPMorgan**) via an assignment recorded on November 24, 2014, and then assigned to U.S. Bank via an assignment recorded on July 31, 2015.[2]

Attached to the Verified Complaint is a "Verification to Foreclosure Complaint" executed by Julia Jackson (**Jackson**), an "Authorized Signatory" of Caliber Home Loans, Inc. (**Caliber**), which "has the contractual right and responsibility to service

---

[2]  The Assignment of Mortgage recorded on November 24, 2014 states that the Mortgage was assigned by the Federal Deposit Insurance Corporation, as receiver of Washington Mutual, to JPMorgan.

the Loan on behalf of [U.S. Bank]."  Jackson's verification states, in relevant part, that she reviewed the Verified Complaint and "hereby confirm[s] the factual accuracy of the statements contained therein to the best of my knowledge," that she has "verified and hereby confirm[s] possession of the original Note by Plaintiff," and that "[t]he Note is indorsed in blank, which thereby converted the Note to a bearer instrument."

On January 31, 2017, U.S. Bank filed a motion for summary judgment and attached, *inter alia*, a declaration by Alyssa Salyers (**Salyers**), a "Foreclosure Document Specialist II" employed by Caliber.  Verhagen opposed the summary judgment motion, asserting, *inter alia*, that U.S. Bank failed to establish possession of the original Note when U.S. Bank filed the Verified Complaint, and thus failed to establish standing under Bank of Am., N.A. v. Reyes-Toledo, 139 Hawaiʻi 361, 390 P.3d 1248 (2017)(Reyes-Toledo I).  On September 25, 2017, the Circuit Court entered the Summary Judgment Order and the Judgment, from which Verhagen appealed.

## II.  Discussion

In order to establish a right to foreclose, the foreclosing plaintiff must establish standing, or entitlement to enforce the subject note, at the time the action was commenced. Reyes-Toledo, 139 Hawaiʻi at 367-70, 390 P.3d at 1254-57.  As expressed by the Hawaiʻi Supreme Court,

> a foreclosing plaintiff must prove "the existence of an agreement, the terms of the agreement, a default by the mortgagor under the terms of the agreement, and giving of the cancellation notice," as well as prove entitlement to enforce the defaulted upon note.

Bank of America, N.A. v. Reyes-Toledo, 143 Hawaiʻi 249, 263-64, 428 P.3d 761, 775-76 (2018) (quoting Reyes-Toledo I, 139 Hawaiʻi at 367-68, 390 P.3d at 1254-55) (format altered).

Moreover, a declaration in support of a summary judgment motion must be based on personal knowledge, contain facts that would be admissible in evidence, and show that the declarant is competent to testify to the matters contained within the declaration.  Wells Fargo Bank, N.A. v. Behrendt, 142 Hawaiʻi

3

37, 44, 414 P.3d 89, 96 (2018) (citing <u>U.S. Bank N.A. v. Mattos</u>, 140 Hawaiʻi 26, 30, 398 P.3d 615, 619 (2017); Hawaiʻi Rules of Civil Procedure Rule 56(e); Rules of the Circuit Courts of the State of Hawaiʻi Rule 7(g)).  Inadmissible evidence "cannot serve as a basis for awarding or denying summary judgment."  <u>Id.</u> (quoting <u>Haw. Cmty. Fed. Credit Union v. Keka</u>, 94 Hawaiʻi 213, 221, 11 P.3d 1, 9 (2000)).

In the context of foreclosures, the Hawaiʻi Supreme Court has addressed whether an employee of a business that receives records from another business can be a "qualified witness" to establish a sufficient foundation for admission of such records under Hawaii Rules of Evidence (**HRE**) Rule 803(b)(6).[3]  <u>Mattos</u>, 140 Hawaiʻi at 30-33, 398 P.3d at 619-622; <u>Behrendt</u>, 142 Hawaiʻi 37, 44-46, 414 P.3d 89, 96-98; <u>Nationstar Mortgage LLC v. Kanahele</u>, 144 Hawaiʻi 394, 402-404, 443 P.3d 86, 94-96 (2019).  In <u>Mattos</u>, the Hawaiʻi Supreme Court relied on the analysis in <u>State v. Fitzwater</u>, 122 Hawaiʻi 354, 365-66, 227 P.3d 520, 531-32 (2010), stating:

> <u>Fitzwater</u> addressed the admissibility of business documents authenticated by an employee of another business, stating:
>
>> A person can be a "qualified witness" who can authenticate a document as a record of regularly conducted activity under HRE Rule 803(b)(6) or its federal counterpart even if he or she is not an

---

[3]  HRE Rule 803(b)(6) states:

> **Rule 803 Hearsay exceptions; availability of declarant immaterial.**  The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (b) Other exceptions.
>
>> (6) Records of regularly conducted activity.  A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made in the course of a regularly conducted activity, at or near the time of the acts, events, conditions, opinions, or diagnoses, as shown by the <u>testimony of the custodian or other qualified witness</u>[.]
>
> (Emphasis added).

4

> employee of the business that created the document, or
> has no direct, personal knowledge of how the document
> was created. As one leading commentator has noted:
>
> ... [sic] The phrase "other qualified witness" is
> given a very broad interpretation.  The witness need
> only have enough familiarity with the record-keeping
> system of the business in question to explain how the
> record came into existence in the ordinary course of
> business.  The witness need not have personal
> knowledge of the actual creation of the documents or
> have personally assembled the records.  In fact, the
> witness need not even be an employee of the
> record-keeping entity as long as the witness
> understands the entity's record-keeping system.
>
> There is no requirement that the records have been
> prepared by the entity that has custody of them, as
> long as they were created in the regular course of
> some entity's business.
>
> The sufficiency of the foundation evidence depends in
> part on the nature of the documents at issue.
> Documents that are "standard records of the type
> regularly maintained by firms in a particular industry
> may require less by way of foundation testimony than
> less conventional documents proffered for admission as
> business records."
>
> Thus, an employee of a business that receives records
> from another business can be a qualified witness who
> can establish a sufficient foundation for their
> admission as records of the receiving business under
> HRE Rule 803(b)(6).

Mattos, 140 Hawaiʻi at 32, 398 P.3d at 621 (quoting Fitzwater,
122 Hawaiʻi at 366, 227 P.3d at 532).

> Subsequently, as further explained in Behrendt:
>
> The court in Mattos held that a witness may be qualified to
> provide the testimony required by HRE Rule 803(b)(6) even if
> the witness is not employed by the business that created the
> document or lacks direct, personal knowledge of how the
> document was created.  Id.  "There is no requirement that
> the records have been prepared by the entity that has
> custody of them, as long as they were created in the regular
> course of some entity's business."  Id. (quoting State v.
> Fitzwater, 122 Hawaiʻi 354, 366, 227 P.3d 520, 532 (2010)).
> The witness, however, must have enough familiarity with the
> record-keeping system of the business that created the
> record to explain how the record was generated in the
> ordinary course of business.  Id.
>
> Records received from another business and incorporated into
> the receiving business' records may in some circumstances be
> regarded as "created" by the receiving business.  Id.
> Incorporated records are admissible under HRE Rule 803(b)(6)
> when a custodian or qualified witness testifies that the
> documents were incorporated and kept in the normal course of
> business, that the incorporating business typically relies
> upon the accuracy of the contents of the documents, and the
> circumstances otherwise indicate the trustworthiness of the

document.  See id.; Fitzwater, 122 Hawaiʻi at 367-68, 227 P.3d at 533-34.

142 Hawaiʻi at 45-46, 414 P.3d at 97-98 (emphasis added).

Here, neither the verification by Jackson, the declaration by Salyers, nor the supplemental declaration by Patterson, contain the necessary foundation to support admission of the Note under Mattos, Behrendt or Kanahele to establish that U.S. Bank had possession of the Note when it commenced this foreclosure action, as required by Reyes-Toledo I.

In her verification, which was attached to the Verified Complaint, Jackson asserted "I have verified and hereby confirm possession of the original Note by [U.S. Bank][,]" and that "the Note is indorsed in blank[.]"  However, Jackson does not establish she is a qualified witness under HRE Rule 803(b)(6) for admission of the Note.  In terms of her qualifications to admit the Note, Jackson's verification states only that she is "employed as a[n] Authorized Signatory by [Caliber], and that:

> 2.    I have access to and am familiar with Caliber's books and records regarding the Loan, including Caliber's servicing records and copies of the applicable loan documents.  I am familiar with the manner in which Caliber maintains its books and records, including computer records relating to the servicing of the Loan.  Caliber's records are made at or near the time of the occurrence of the matters set forth in such records, by an employee or representative with knowledge of the acts or events recorded.  Such records are obtained, kept and maintained by Caliber in the regular course of Caliber's business.  Caliber relies on such records in the ordinary course of its business.

Jackson's verification does not state that she is a custodian of records for Caliber.  Further, her verification does not demonstrate that she has "enough familiarity with the record-keeping system of the business that created the record to explain how the record was generated in the ordinary course of business."  Behrendt, 142 Hawaiʻi at 45, 414 P.3d at 97; Mattos, 140 Hawaiʻi at 32-33, 398 P.3d at 621-22.  Thus, Jackson's verification fails to establish that she is a "qualified witness" for purposes of admitting the Note under the HRE Rule 803(b)(6).

The Salyers Declaration, attached in support of U.S. Bank's summary judgment motion, likewise does not establish that

6

Salyers is a custodian of records for Caliber or a qualified witness with regards to admitting the Note.  Salyers, a "Foreclosure Document Specialist II" employed by Caliber, attests in pertinent part:

> 2.    I have access to and am familiar with Caliber's books and records regarding the Loan, including Caliber's servicing records and copies of the applicable loan documents.  I am familiar with the manner in which Caliber maintains its books and records, including computer records relating to the servicing of the Loan.  Caliber's records are made at or near the time of the occurrence of the matters set forth in such records, by an employee or representative with knowledge of the acts or events recorded.  Such records are obtained, kept and maintained by Caliber in the regular course of Caliber's business.  Caliber relies on such records in the ordinary course of its business.  Caliber's records include and incorporate records for the Subject Loan obtained from JPMorgan Chase Bank, N.A. ("Prior Servicer"), the prior loan servicer for the Subject Loan.  The records obtained by Caliber from the Prior Servicer are kept and maintained by Caliber in the ordinary course of its business for the purpose of maintaining an accounting of payments received, expenses incurred, and amounts advanced with regard to the Subject Loan, and such records are relied upon by Caliber in the regular course of its business.

However, Salyers does not attest to being familiar with the record-keeping system of Washington Mutual or JP Morgan.  See Behrendt, 142 Hawaiʻi at 45-46, 414 P.3d at 97-98; Mattos, 140 Hawaiʻi at 32-33, 398 P.3d at 621-22.

Finally, even the Supplemental Declaration by Melinda Patterson (**Patterson**), an "Authorized Officer" employed by Caliber, fails to establish under Mattos and Behrendt that she is a custodian of records or a qualified witness for purposes of admitting the Note as evidence pursuant to HRE Rule 803(b)(6).  Patterson attests, in pertinent part:

> 2.    I have access to and am familiar with Caliber's books and records regarding the Loan, including Caliber's servicing records and copies of the applicable loan documents.  I am familiar with the manner in which Caliber maintains its books and records, including computer records relating to the servicing of the Loan.  Caliber's records are made at or near the time of the occurrence of the matters set forth in such records, by an employee or representative with knowledge of the acts or events recorded.  Such records are obtained, kept and maintained by Caliber in the regular course of Caliber's business.  Caliber relies on such records in the ordinary course of its business.  Caliber's records include and incorporate records for the Loan obtained from JPMorgan Chase Bank, N.A. ("Prior Servicer"), the prior loan servicer for the Loan.  The

7

> records obtained by Caliber from the Prior Servicer are kept and maintained by Caliber in the ordinary course of its business for the purpose of maintaining an accounting of payments received, expenses incurred, and amounts advanced with regard to the Loan, and such records are relied upon by Caliber in the regular course of its business.  The information regarding the Loan transferred to Caliber from the Prior Servicer has been validated in many ways, including, but not limited to, going through a due diligence phase, review of hard copy documents, and review of the payment history and accounting of other fees, costs, and expenses charged to the Loan by Prior Servicer.  It is Caliber's regular practice, after these phases are complete, to receive records from prior servicers and integrate these records into Caliber's business records at the time of acquisition.  Once integrated, Caliber maintains and relies on these business records in the ordinary course of its mortgage loan servicing business.

Like Jackson and Salyers, Patterson does not attest to being familiar with the record-keeping system of JP Morgan (the prior servicer) or Washington Mutual (which purportedly created and indorsed the Note in blank).

Without the required foundation for admission of the Note, Patterson's assertion that U.S. Bank, or its counsel Aldridge Pite, LLP (**Aldridge Pite**), was in possession of the original Note when this action was filed does not meet the requirements under <u>Reyes-Toledo I</u>, <u>Mattos</u>, or <u>Behrendt</u>.  Further, Patterson's reliance on an "Attorney's Bailee Letter Agreement" (**Attorney Bailee Letter**) signed by Caliber "Authorized Signatory," Jennifer Williams, and a representative from Aldridge Pite, is similarly unhelpful in establishing the requirements under <u>Reyes-Toledo I</u>.  As noted, there is not sufficient basis to admit the Note, and further, the Attorney Bailee Letter was executed approximately nine months after U.S. Bank commenced the foreclosure action.

In light of the admissible evidence in the record, U.S. Bank failed to demonstrate that it was in possession of the original, blank indorsed Note at the time this action was commenced.  We need not address Verhagen's other arguments, including his contention that the blank indorsement on the Note by Cynthia A. Riley was fraudulent.

Viewing the facts and inferences in the light most favorable to Verhagen, as we must for purposes of reviewing a

summary judgment ruling, <u>Reyes-Toledo</u>, 139 Hawaiʻi at 371, 390 P.3d at 1258, there is a genuine issue of material fact as to whether U.S. Bank had standing and was entitled to enforce the subject Note when this foreclosure action was commenced.  Thus, under <u>Reyes-Toledo I</u>, <u>Mattos</u> and <u>Behrendt</u>, U.S. Bank has not met its initial burden to show that it was entitled to summary judgment for the decree of foreclosure.

### III.  Conclusion

Based on the foregoing, the Judgment and the "Findings of Fact and Conclusions of Law; Order Granting Plaintiff's Motion for Summary Judgment and for Interlocutory Decree of Foreclosure Filed January 31, 2017," both entered on September 25, 2017, by the Circuit Court of the Second Circuit, are vacated.  This case is remanded to the Circuit Court for further proceedings.[4]

DATED:  Honolulu, Hawaiʻi, July 20, 2020.


On the briefs:                        /s/ Lisa M. Ginoza
                                      Chief Judge
Gary Victor Dubin,
Frederick J. Arensmeyer,              /s/ Derrick H.M. Chan
for Defendants-Appellants.            Associate Judge

David B. Rosen,                       /s/ Keith K. Hiraoka
David E. McAllister,                  Associate Judge
Justin S. Moyer,
for Plaintiff-Appellee.

---

[4]  On remand, the parties may need to address the Hawaiʻi Supreme Court's "Order Regarding Foreclosure or Non-Judicial Foreclosure Related Actions: Certification of Compliance With the Coronavirus Aid, Relief, and Economic Security Act in Foreclosures," issued on June 26, 2020.