<span style="color:red">**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000699
18-SEP-2020
07:49 AM**</span>

NO. CAAP-18-0000699

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR CSMC
MORTGAGE LOAN TRUST 2006-7, Plaintiff-Appellee,
v.
WATOSHINA LYNN COMPTON, Defendant-Appellant,
and
GABI A. BENGIS; RON SERLE; DEPARTMENT
OF TAXATION - STATE OF HAWAIʻI,
Defendants-Appellees,
and
JOHN DOES 1-20; JANE DOES 1-20; DOE CORPORATIONS 1-20;
DOE ENTITIES 1-20; AND DOE GOVERNMENTAL UNITS 1-20
Defendants


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 17-1-0025(3)


MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, Chan and Hiraoka, JJ.)

## I.  Introduction

This appeal arises out of a civil action initiated by Plaintiff-Appellee U.S. Bank National Association as Trustee for CSMC Mortgage Loan Trust 2006-7 (**U.S. Bank**) to foreclose on real property owned by Defendant-Appellant Watoshina Lynn Compton (**Compton**) and located in Kihei, on the island of Maui (**Property**). Compton appeals from the Judgment entered on August 10, 2018, pursuant to the "Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion for Summary Judgment against All

Defendants and for Interlocutory Decree of Foreclosure," also entered on August 10, 2018, by the Circuit Court of the Second Circuit (**Circuit Court**).[1]

On appeal, Compton asserts that the Circuit Court erred in granting U.S. Bank's motion for summary judgment and for interlocutory decree of foreclosure (**Motion for Summary Judgment**) because (1) U.S. Bank failed to meet its burden of establishing it was the holder of the subject promissory note (**Note**) at the time it filed the complaint and thus lacked standing, and (2) U.S. Bank failed to establish that Compton had been provided adequate notice of the alleged default.

For the reasons discussed below, we vacate and remand.

## II.  Discussion

U.S. Bank filed the Complaint For Mortgage Foreclosure (**Complaint**) in this action on January 24, 2017.  The Complaint asserts that in return for a loan received, Compton signed a Note on May 18, 2006, made and delivered to lender Countrywide Home Loans, Inc. (**Countrywide**).  The Complaint further asserted that the Note was endorsed in blank, and that U.S. Bank had possession of the Note through its counsel.

Compton contends that U.S. Bank failed to establish that it was entitled to enforce the Note at the time that U.S. Bank filed the Complaint.  In particular, Compton asserts that the evidence which U.S. Bank sought to admit through (1) the "Declaration of Indebtedness and on Prior Business Records" by Carol Davis (**Davis**), a "Document Execution Specialist" employed by Nationstar Mortgage LLC d/b/a Mr. Cooper (**Nationstar**), as servicing agent for U.S. Bank, attached to the Motion for Summary Judgment, and (2) the "Declaration of Custodian of Note" by Gina Santellan (**Santellan**), a "custodian of original loan records" employed by The Mortgage Law Firm, PLC (**TMLF CA**), attached to U.S. Bank's "Supplemental Memorandum in Support of Its [Motion

---

[1]  The Honorable Joseph E. Cardoza presided.

for Summary Judgment]," was hearsay and not admissible evidence under Hawaii Rules of Evidence (**HRE**) 803(b)(6).[2]

In <u>Bank of Am., N.A. v. Reyes-Toledo</u>, 139 Hawai'i 361, 390 P.3d 1248 (2017), the Hawai'i Supreme Court held that in order for a foreclosing plaintiff to establish standing to foreclose, the plaintiff must show entitlement to enforce the promissory note at the time the foreclosure action was commenced. <u>Id.</u> at 368, 390 P.3d at 1255.

> Whether a party is entitled to enforce a promissory note is determined by application of HRS § 490:3-301 (2008), which provides the following:
>
> "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 490:3-309 or 490:3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

<u>Id.</u> at 369, 390 P.3d at 1256.

---

[2] HRE Rule 803(b)(6) provides:

> **Rule 803 Hearsay exceptions; availability of declarant immaterial.**
> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> **(b) Other exceptions.**
>
> . . . .
>
> **(6) Records of regularly conducted activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made in the course of a regularly conducted activity, at or near the time of the acts, events, conditions, opinions, or diagnoses, <u>as shown by the testimony of the custodian or other qualified witness</u>, or by certification that complies with rule 902(11) or a statute permitting certification, unless the sources of information or other circumstances indicate lack of trustworthiness.
>
> (Emphasis added).

Here, U.S. Bank contends that it had standing to foreclose because its servicing agent, Nationstar, or its counsel, TMLF, had possession of the subject Note prior to the commencement of this action.  In this regard, business records such as a promissory note may be admitted into evidence through "the testimony of the custodian or other qualified witness" of such records pursuant to HRE Rule 803(b)(6).

For purposes of admitting a promissory note in a mortgage foreclosure action, and given Hawaiʻi case law on the issue, it appears that someone purporting to be a "custodian or other qualified witness" must establish sufficient foundation upon which to admit the note.  In Wells Fargo Bank, N.A. v. Behrendt, 142 Hawaiʻi 37, 414 P.3d 89 (2018), the Hawaiʻi Supreme Court stated:

> The court in Mattos held that a witness may be qualified to provide the testimony required by HRE Rule 803(b)(6) even if the witness is not employed by the business that created the document or lacks direct, personal knowledge of how the document was created.  Id.  "There is no requirement that the records have been prepared by the entity that has custody of them, as long as they were created in the regular course of some entity's business."  Id.  (quoting State v. Fitzwater, 122 Hawaiʻi 354, 366, 227 P.3d 520, 532 (2010)).  The witness, however, must have enough familiarity with the record-keeping system of the business that created the record to explain how the record was generated in the ordinary course of business.  Id.
>
> Records received from another business and incorporated into the receiving business' records may in some circumstances be regarded as "created" by the receiving business.  Id.  Incorporated records are admissible under HRE Rule 803(b)(6) when a **custodian or qualified witness** testifies that the documents were incorporated and kept in the normal course of business, that the incorporating business typically relies upon the accuracy of the contents of the documents, and the circumstances otherwise indicate the trustworthiness of the document.  See id.; Fitzwater, 122 Hawaiʻi at 367-68, 227 P.3d at 533-34.

Id. at 45-46, 414 P.3d at 97-98.  As further explained with regard to custodians:

> Obviously, mere possession or "custody" of records under [circumstances where a second organization incorporates the records into their own] does not qualify employees of the possessing party to lay the requisite foundation, and reliance by the organization on records created by others, although an important part of establishing trustworthiness, without more is

4

> not sufficient.  However, when the business offering the records of another has made an independent check of the records, has integrated them into their own business operation in a way that establishes trustworthiness or contains other assurances of trustworthiness, or can establish accuracy by other means, the necessary foundation may be established.

2 McCormick On Evid. § 292 (8th ed. 2020) (emphasis added, footnotes omitted).  Consequently, even a custodian of records must lay a proper foundation for the admission of records of regularly conducted activity pursuant to HRE Rule 803(b)(6).

Here, Davis does not attest to being a custodian of records, but an authorized signer for Nationstar.  In her declaration signed on September 8, 2017, and submitted with U.S. Bank's Motion for Summary Judgment, Davis attests in relevant part:

> 1.  I am authorized to sign this Declaration on behalf of Plaintiff, [U.S. Bank], as an authorized signer of [Nationstar], which is Plaintiff's servicing agent for the subject loan ("the loan").
>
> 2.  Nationstar maintains records for the loan in its capacity as Plaintiff's servicer.  As part of my job responsibilities for Nationstar, I am familiar with the type of records maintained by Nationstar in connection with the Loan.  As such, I am authorized to make this Declaration.
>
> 3.  Nationstar is the current loan servicer for Plaintiff and acts as the exclusive representative and agent of Plaintiff in the servicing and administering of mortgage loans referred to Nationstar, including the Loan being foreclosed in this action.
>
> 4.  The information in this Declaration is taken from Nationstar's business records.  I have personal knowledge of Nationstar's procedures for creating these records.  They are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of Nationstar's regularly conduced business activities; and (c) created by Nationstar as a regular practice.
>
> . . . .
>
> 6.  Plaintiff has possession of the Note with standing to prosecute the instant action and the right to foreclose the subject Mortgage.  The Note has been indorsed to Blank.  In anticipation that the original Note would be required for these foreclosure proceedings, Plaintiff has since caused the original

Note to be delivered to Nationstar, agent for the Plaintiff.  Nationstar received from the Plaintiff, the original Note, reviewed the original Note and as the agent for Plaintiff, is entitled to collect on the original Note.  <u>Prior to the filing of the Complaint on 01/24/17, Nationstar caused the original Note to be delivered to the Plaintiff's attorney, TMLF Hawaii LLLC, as agent for the Plaintiff</u>.  A true and correct copy of the original Note is attached hereto as Exhibit "1" and incorporated herein by reference.

7.  Nationstar's records indicate that Plaintiff, by and through Nationstar had possession of the original Note prior to 01/24/17, the date of the filing of the complaint in this foreclosure.

. . . .

13.  Under the terms of Nationstar's servicing arrangement, Plaintiff does not participate in, keep and maintain any of the day to day loan documents, inputting of accounting data, saving of business records and all communications with borrowers.

14.  The Plaintiff, as the Investor, has a passive role with the primary emphasis on tracking its return on investment.  In terms of routine business records on the Loan, Nationstar acts as the sole custodian of Plaintiff's records.

15.  Nationstar became Plaintiff's loan servicer for the Loan being foreclosed in this action on 01-December-2013.

. . . .

23.  <u>The prior loan servicer for this mortgage loan was Bank of America ("Prior Servicer")</u>.

24.  Upon becoming Plaintiff's loan servicer, Nationstar took custody and control of loan documents and business records of the Prior Servicer and incorporated all such records into the business records of Nationstar.

25.  Before the Prior Servicer's records were incorporated into Nationstar' [sic] own business records, it conducted an independent check into the Prior Servicer's records and found them in keeping with industry wide loan servicing standards and only integrated them into Nationstar' [sic] own business records after finding the Prior Servicer's records were made as part of a regularly conducted activity, met industry standards and determined to be trustworthy.

26.  In performing its services to the Plaintiff, Nationstar relies upon the accuracy of the Prior Servicer's records and those records are now a part of and used for all purposes in the conduct of Nationstar's regularly conducted activity of keeping and maintaining its own business records.

27.  The Prior Servicer's records are regularly used and relied upon by Nationstar in all dealings with all the borrowers, in reporting all profit and loss on the mortgage loans to the Plaintiff, in the preparation, filing and payment of income taxes dependent upon such information, and in evaluating Nationstar's own job performance.

. . . .

29.  Nationstar did review and determine the Prior Servicer's business records were trustworthy otherwise it would not have incorporated it into its own records.

(Emphases added).  Attached to Davis's declaration is a copy of the Note, which states that Countrywide is the lender and which has an undated blank indorsement by Countrywide on the second page.

The Davis declaration does not state that U.S. Bank possessed the Note at the time the Complaint was filed, merely stating that "[U.S. Bank] has possession of the Note," and that based on Nationstar's records, U.S. Bank "by and through Nationstar had possession of the original Note prior to 01/24/17, the date of the filing of the complaint in this foreclosure." (Emphases added).

Moreover, although Davis attests to Nationstar incorporating the records of Bank of America, the "Prior Servicer," and relying upon the accuracy of those records, Davis does not aver that she is familiar with the record-keeping system of Bank of America or the lender Countrywide, which purportedly created the Note and signed the blank endorsement.  Thus, Davis's declaration failed to establish the foundation for the Note to be admitted into evidence.  Behrendt, 142 Hawaiʻi at 45, 414 P.3d at 97; U.S. Bank N.A. v. Mattos, 140 Hawaiʻi 26, 32-33, 398 P.3d 615, 621-22 (2017).

U.S. Bank also submitted a "Declaration of Custodian Note" executed on May 18, 2018, by Gina Santellan, an employee of TMLF CA and a "custodian of records," which states:

1.  I am employed by [TMLF CA] as the custodian of original loan records of foreclosing mortgagees, their respective loan servicers and foreclosure counsel.

7

2.  <u>My custodial duties include taking possession of original loan documents of foreclosing mortgagees</u> represented by both TMLF CA for the foreclosure of the clients' California properties and TMLF Hawaii LLLC. [sic] ("Plaintiff's Counsel") for the foreclosure of the clients' Hawaii properties. Foreclosure mortgagees represented by both law firms are referred to as "Common Law Clients".

3.  In this Hawaii foreclosure, [U.S. Bank] ("Plaintiff") and its loan servicer, [Nationstar], are both clients of TMLF CA and Plaintiff's Counsel.

4.  As custodian for this Common Law Client, I am duly authorized by the Plaintiff to make this Supplemental Declaration in support of Plaintiff's [Motion for Summary Judgment] filed on February 20, 2018.

5.  I am over the age of 18 years, and <u>I have personal knowledge of the facts and matters stated herein based on my review of the business records described below.</u>  The statements set forth in this Supplemental Declaration are true and correct.

6.  <u>As custodian for Plaintiff's records, I supervise and control TMLF CA's employees in the regular maintenance of our receipt records, document inventory, secure storage, retrieval, and transmittal of the original loan collateral file, including the original Note, of all Common Clients.</u>

7.  Until we are in receipt and possession of the original documents, we do not advise Plaintiff's Counsel it is clear to proceed with the foreclosure process.

8.  For Hawaii foreclosures, it is my duty to transmit to Plaintiff's Counsel immediately upon its request, the original loan documents as may be needed for inspection by borrowers, production as part of discovery by opposing counsel, hearings or other court proceedings.

9.  The process of documenting our receipt and retention of loan documents for Common Law Clients is part of a regularly conducted activity under my immediate supervision and control.  All such records, including but not limited to the receipt of bailee letters and its enclosures such as original notes are made at or near the time of is [sic] occurrence and recorded by a person with knowledge of those matters. This record custodial process is done in the course of our regularly conducted activity as custodian for Plaintiff's Counsel and this regularly conducted activity is part of our regular custodial practice.

10.  Receipt of the Plaintiff's original Note was handled under standard operating procedures as part of our regularly conducted activity describe [sic] above.

11.  The document used to confirm the date of our receipt of the foreclosing mortgagee's original Note is a bailee letter.

12.  On or about 01/02/2015, TMLF CA, as custodian for Plaintiff and Plaintiff's Counsel, received the Bailee Letter and original Note indorsed in blank, among other documents, for the property being foreclosed in this action.  The Bailee Letter and original Note indorsed in blank, among other documents, have since **remained in our possession** as custodian for Plaintiff and Plaintiff's Counsel.

13.  The Bailee Letter was accepted by me on 01/07/2015, a TMLF CA employee with knowledge working under by direct supervision and control as the custodian for Plaintiff and Plaintiff's Counsel.

14.  A true and correct copy of the Bailee Letter is attached as Exhibit "12".  TLMF CA took possession of the original Note indorsed in blank as custodian for Plaintiff and Plaintiff's Counsel on or before 01/07/2015.  Under the direction of and with authority from Nationstar as Plaintiff's loan servicer, it delivered the original Note indorsed in blank to us with the Bailee Letter.  Attached hereto as Exhibit "13" is a true and correct copy of the original Note indorsed in blank, received by TMLF CA on or about 01/02/2015, and acknowledged on 01/07/2015.

15.  The Bailee Letter Agreement attached Exhibit "12" is part of the Plaintiff's business records on this action and I have personal knowledge as to how these records are created, used and retained: [sic] The attached business records were made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of the law firm's regularly conducted law business activities; and (c) created by the Law Firm as part of its regular practice when acting as custodian.

(Emphases added).  The Bailee Letter attached to the Santellan Declaration is dated January 2, 2015, addressed to Ryan Remington at TMLF CA, and signed by "Nationstar Mortgage LLC Document Control Department" as the creator of the Bailee Letter as indicated by the "Nationstar Mortgage" logo on the top right corner of the Bailee Letter.  The Bailee Letter further indicates that the recipients "acknowledge and agree that all of the enclosed documents are being provided to you and are to be held by you, as agent for and Bailee of, and subject to the direction of, Nationstar Mortgage LLC."  The "enclosed documents" consist

of the "Note," "Security Instrument," and "Title Policy." Acknowledgment of receipt is signed by Santellan on January 7, 2015.

Even if we assume, without deciding, that the Bailee Letter is admissible evidence, Santellans' declaration does not establish the foundation for admission of the Note to establish possession.  That is, like the Davis declaration, Santellan does not attest that she has "familiarity with the record-keeping system of the business that created the record to explain how the record was generated in the ordinary course of business." Behrendt, 142 Hawaiʻi at 45, 414 P.3d at 97 (quoting Mattos, 140 Hawaiʻi at 32, 398 P.3d at 621); Fitzwater, 122 Hawaiʻi at 365-66, 227 P.3d at 531-32) (determining that while there is no requirement that the records have been prepared by the entity that has custody of them, as long as they were created in the regular course of some entity's business, the witness must have enough familiarity with the record-keeping system of the business that created the record to explain how the record was generated in the ordinary course of business) (quotation marks omitted).

Accordingly, the Davis and Santellan declarations do not lay adequate foundation to establish that U.S. Bank had possession of the Note when the Complaint was filed.  Behrendt, 142 Hawaiʻi at 45-46, 414, P.3d at 97-98; Mattos, 140 Hawaiʻi at 33, 398 P.3d at 622; Reyes-Toledo, 139 Hawaiʻi at 370-71, 390 P.3d at 1257-58.

Viewing the evidence in the light most favorable to Compton, as we must for purposes of a summary judgment ruling, we conclude that there is a genuine issue of material fact as to whether U.S. Bank had standing to initiate this foreclosure action when it was commenced.  Accordingly, we conclude that the Circuit Court erred in granting U.S. Bank's Motion for Summary Judgment.  Because plaintiff's standing to enforce the Note is dispositive, we do not reach Compton's other point of error.

### III.  Conclusion

Based on the foregoing, the Judgment and the "Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion for Summary Judgment against All Defendants and for Interlocutory Decree of Foreclosure," both entered on August 10, 2018, by the Circuit Court of the Second Circuit, are vacated.  This case is remanded to the Circuit Court for further proceedings consistent with this Memorandum Opinion.[3]

DATED:  Honolulu, Hawaiʻi, September 18, 2020.


On the briefs:

Gary Victor Dubin,
Katherine S. Belford,
for Defendant-Appellant.

J. Blaine Rogers,
Madisson L. Heinze,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Derrick H.M. Chan
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge

---

[3]  On remand, the parties may need to address the Hawaiʻi Supreme Court's "Order Regarding Foreclosure or Non-Judicial Foreclosure Related Actions: Certification of Compliance With the Coronavirus Aid, Relief, and Economic Security Act in Foreclosures," issued on June 26, 2020, and extended on August 28, 2020.