NOT FOR PUBLICATION IN WEST'S HAWAI‘I REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000075
31-MAR-2025
08:06 AM
Dkt. 71 SO**

NO. CAAP-22-0000075

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I

U.S. BANK, NATIONAL ASSOCIATION AS TRUSTEE
FOR WAMU MORTGAGE PASS THROUGH CERTIFICATE
FOR WMALT SERIES 2006-AR1 TRUST, Plaintiff-Appellee,
v.
DONOVAN PAUL WEBB, Defendant-Appellant;
BANK OF AMERICA, N.A.; HAWAII PLANING MILL, LTD.;
MAUI LANI COMMUNITY ASSOCIATION; WINSTON PANG;
STACIA PANG, Defendants-Appellees;
JOHN DOES 1-50; JANE DOES 1-50; DOE PARTNERSHIPS 1-50;
DOE CORPORATIONS 1-50; DOE ENTITIES 1-50; and
DOE GOVERNMENTAL UNITS 1-50, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CC171000024)

### SUMMARY DISPOSITION ORDER
(By: Nakasone, Presiding Judge, McCullen and Guidry, JJ.)

Defendant-Appellant Donovan Paul Webb (**Webb**) appeals from the "Findings of Fact [(**FOFs**)]; Conclusions of Law [(**COLs**)]; and Order Granting Plaintiff[-Appellee] U.S. Bank National Association, as Trustee for WaMu Mortgage Pass Through Certificate for WMALT Series 2006-AR1 Trust's [(**U.S. Bank**)] Second Motion for Summary Judgment as Against All Defendants and

for Interlocutory Decree of Foreclosure" (**Order**), and its "Judgment on [Order]" (**Judgment**), both filed on January 21, 2022, by the Circuit Court of the Second Circuit (**circuit court**).[1]

This appeal arises out of a January 2017 foreclosure action by U.S. Bank against Webb.[2] U.S. Bank sought to foreclose on an Adjustable Rate Note (**Note**), which was secured by a mortgage (**Mortgage**) on real property located in Kahului, Maui (**Property**). The Note was assigned to U.S. Bank, by Washington Mutual Bank, in April 2009. It appears that JPMorgan Chase Bank, N.A. (**JPMorgan Chase**) was the loan servicer at the time of the assignment to U.S. Bank. Select Portfolio Servicing, Inc. (**SPS**) became the loan servicer of the Note in November 2013.

On appeal, Webb contends that the circuit court erred by granting summary judgment in favor of U.S. Bank.[3] Upon

---

[1]    The Honorable Peter T. Cahill presided.

[2]    Bank of America, N.A. (**Bank of America**) was named as a defendant in the underlying case, and is a nominal appellee to this appeal. In May 2023, the parties filed a stipulation to dismiss Bank of America as a party to the appeal without prejudice. The parties stipulated in 2018, prior to the filing of the notice of appeal, to the dismissal of Bank of America, without prejudice, from the underlying case. The stipulated dismissal of Bank of America from this appeal is therefore unnecessary.

[3]    Webb raises several points of error, contending that:

The Circuit Court Erred in Granting US Bank's Motion for Summary Judgment Because: (A) US Bank had no standing because they did not establish that they had "rightful possession" of the Note at the time the Note was lost, nor did they establish that they had the right to enforce the lost note under HRS § 490:3-309, and the declarations submitted by US Bank were contradictory; (B) US Bank had no

(continued . . .)

careful review of the record, briefs, and relevant legal authorities, and having given due consideration to the arguments advanced and the issues raised by the parties, we conclude that there are genuine questions of material fact as to whether U.S. Bank had standing to enforce the Note.  We therefore vacate the Order and Judgment on this basis.

We review the circuit court's grant of summary judgment de novo, applying the following standard,

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.  The evidence must be viewed in the light most favorable to the non-moving party.  In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

Ralston v. Yim, 129 Hawaiʻi 46, 55-56, 292 P.3d 1276, 1285-86 (2013) (citation omitted).

---

[3](. . .continued)
standing to bring this foreclosure action because the Affidavit of Lost Note was not generated until AFTER the Complaint was filed[;] (C) US Bank has failed to establish the admissibility of business records of the prior servicer[;] and (D) US Bank has failed to establish that it provided Mr. Webb with an adequate notice of default.

(Emphasis omitted.)

Webb also challenges various FOFs and COLs in relation to the above listed points of error.  Because we conclude that U.S. Bank has not demonstrated standing to enforce the Note, we decline to address Webb's additional points of error.

In Bank of America, N.A. v. Reyes-Toledo, the Hawai'i Supreme Court held that,

> A foreclosing plaintiff's burden to prove entitlement to enforce the note overlaps with the requirements of standing in foreclosure actions as standing is concerned with whether the parties have the right to bring suit. Typically, a plaintiff does not have standing to invoke the jurisdiction of the court unless the plaintiff has suffered an injury in fact. A mortgage is a conveyance of an interest in real property that is given as security for the payment of the note. A foreclosure action is a legal proceeding to gain title or force a sale of the property for satisfaction of a note that is in default and secured by a lien on the subject property. Thus, the underlying "injury in fact" to a foreclosing plaintiff is the mortgagee's failure to satisfy its obligation to pay the debt obligation to the note holder. Accordingly, **in establishing standing, a foreclosing plaintiff must necessarily prove its entitlement to enforce the note as it is the default on the note that gives rise to the action.**

139 Hawai'i 361, 367-68, 390 P.3d 1248, 1254-55 (2017) (emphasis added) (cleaned up).

Here, we conclude that U.S. Bank has not sufficiently proved its entitlement to enforce the Note. U.S. Bank represented, in its second motion for summary judgment, that it was entitled to enforce the Note pursuant to Hawaii Revised Statutes (**HRS**) §§ 490:3-301 (2008) and 490:3-309 (2008). HRS § 490:3-301 states, in relevant part,

> "Person entitled to enforce" an instrument means . . . (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 490:3-309[.]

HRS § 490:3-309, which governs the "[e]nforcement of lost, destroyed, or stolen instrument[s]," states, in relevant part,

4

(a) A person not in possession of an instrument is entitled to enforce the instrument if (i) **the person was in rightful possession of the instrument and entitled to enforce it when loss of possession occurred**, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

(b) **A person seeking enforcement of an instrument under subsection (a) must prove** the terms of the instrument and **the person's right to enforce the instrument.** If that proof is made, section 490:3-308 applies to the case as if the person seeking enforcement had produced the instrument.

(Emphasis added.)

In his Affidavit of Lost Note, attorney Lester K.M. Leu (**Leu**), attested that,

2. In January 2008, Leu & Okuda was retained by Washington Mutual Bank to complete a non-judicial foreclosure of the Mortgage on the [Property], which Mortgage secure[d] [the Loan]. Leu & Okuda caused a Notice of Mortgagee's Non-Judicial Foreclosure Under Power of Sale to be recorded in the Bureau of Conveyances of the State of Hawai'i (the **"Bureau"**) as Document No. 2008-058945 on April 15, 2008. Leu & Okuda closed the matter in June 2008 and it did not complete the non-judicial foreclosure.

3. **In March 2009, Leu & Okuda was retained by [JPMorgan Chase], as servicer for [U.S. Bank], to proceed with a new non-judicial foreclosure of the same Mortgage.** In connection with that retention, **Leu & Okuda recorded an Assignment of Mortgage and Note to U.S. Bank in the Bureau as Document No. 2009-060793 on April 20, 2009.**

4. **On May 11, 2009, Leu & Okuda received the collateral file with the original promissory note for the Loan from JPMorgan Chase by Federal Express.** Federal Express's tracking number for the package with the collateral file was 4096 2448 4587. A true and correct copy of the FedEx Shipping Label is attached hereto as Exhibit "6." At that time, Leu & Okuda's procedure was to send collateral files with original promissory notes to the case managers at Leu & Okuda assigned to handle particular loans.

5. Leu & Okuda closed the matter shortly after May 19, 2009 when Leu & Okuda was instructed to close its files

5

for this matter because the Borrower had reinstated the loan by curing the defaults that then existed.

6.  Leu & Okuda's usual procedure with respect to matters being closed at that time was for the case managers to send their files for the loans assigned to them to the department that closed files and that department would shred the correspondence and pleadings files, but definitely not the collateral files. **Leu & Okuda has searched its records for the collateral file multiple times and has been unable to locate it.  Leu & Okuda therefore believes that the collateral file with the original note was inadvertently shredded** when the correspondence and pleadings files for the matter were shredded.

(Emphasis added.)

In his Supplemental Affidavit of Lost Note, Leu attested to the following:

2.  In 2009, when Leu & Okuda received foreclosure referrals from [JPMorgan Chase], **[JPMorgan] Chase's standard practice was to send to Leu & Okuda by Federal Express ("Fed Ex") packages with the collateral files for the loan being referred for foreclosure** and to include release transmittals, which documented [JPMorgan] Chase's release of the collateral files. **The collateral files contained the original notes, copies of the mortgages and copies of any assignments of the mortgages.**  Leu & Okuda's standard practice was to scan the release transmittals and Federal Express labels.

3.  A true and correct copy of the release transmittal for the collateral file for loan XXXXXX9848 sent to Leu & Okuda by [JPMorgan] Chase on 5/08/09 via Fed Ex with tracking number 4096 2448 4587 is attached hereto as Exhibit 6.  The release transmittal identified the borrower as Donovan Webb is attached hereto as Exhibit 6A.

4.  As stated in my prior affidavit, **Leu & Okuda believes that the collateral file with the original note was inadvertently shredded when the correspondence and pleadings files for the matter were shredded after May 19, 2009,** when Leu & Okuda was instructed to close its files for this matter because the Borrower had reinstated the Loan by curing the defaults that then existed.

5.  **Leu & Okuda did not know that it no longer had possession of the collateral file with the original note for the Loan until July 30, 2019 when I reviewed Leu & Okuda's records relating to the Loan.**  My review was therefore <u>after</u> this lawsuit had commenced on January 24, 2017, <u>after</u> the Attorney Affirmation was filed in this lawsuit on January 24, 2017, and <u>after</u> [U.S. Bank's] first

> Motion for Summary Judgment was filed in this lawsuit on October 5, 2017.
>
> 6. Therefore, prior to the filing of the Complaint with its accompanying Attorney Affirmation and prior to the filing of the first Motion for Summary Judgment, Leu & Okuda had not informed U.S. Bank, the prior loan servicer, [JPMorgan Chase], or its current loan servicer for the loan, [SPS], that the original note was lost because Leu & Okuda did not then realize that the original note had been lost.

(Emphasis added.)

Notwithstanding Leu's Affidavits, it is unclear whether the Note was in fact lost, because it is unclear whether the Note was contained within the "collateral file" that was transmitted by JPMorgan Chase to Leu & Okuda in May 2009. Leu does not represent that he inspected the collateral file, or that he otherwise had personal knowledge of what the collateral file received in May 2009 contained.[4] He stated that "[JPMorgan] Chase's standard practice was to send to Leu & Okuda by [Fed Ex] packages with the collateral files for the loan being referred for foreclosure," and that the "collateral files contained the original notes, copies of the mortgages[,] and copies of any assignments of the mortgages."

Leu thus inferred, based on JPMorgan Chase's practice, that the Note would have been included in the collateral file transmitted by JPMorgan Chase in May 2009. Leu did not, however, explain how he was qualified to make this inference

---

4 Leu represented that he "reviewed Leu & Okuda's records relating to the Loan" on July 30, 2019 – ten years after the "collateral file" was transmitted – at which time he was "unable to locate" the Note.

with regard to JPMorgan Chase's "collateral file" transmittal practices.  See Nationstar Mortg. LLC v. Kanahele, 144 Hawaiʻi 394, 401, 443 P.3d 86, 93 (2019) ("[A]ffidavits in support of a summary judgment motion must be scrutinized to determine whether the facts they aver are admissible at trial and are made on the personal knowledge of the affiant.") (cleaned up).

U.S. Bank did not produce an affidavit or declaration by a person with knowledge of JPMorgan Chase's record keeping and transmittal practices to establish that the collateral file transmitted to Leu & Okuda in May 2009 included the Note.[5]  There is also no documentary evidence that would establish the

---

[5]     JPMorgan Chase Authorized Signer Karla Baxter's November 8, 2021 declaration, and SPS Document Control Officer Sherry Benight's December 19, 2019 declaration, did not reference the transmittal of the collateral file from JPMorgan Chase to Leu & Okuda in May 2009.  SPS Document Control Officer Mark Syphus's July 7, 2020 declaration summarily represented only that:

> 7.  **SPS's business records reflected . . .** at the time of the filing of the Complaint, **the collateral file for the Loan, which included the original Adjustable Rate Note** (the **"Note"**) executed by the Borrower, **had previously been delivered to the law firm of Leu & Okuda.**  At that time, SPS's business records did not reflect that Leu & Okuda no longer possessed the original Note or that the original Note had been lost.  It is the regular practice of SPS to record any changes in the location of the collateral file.  Therefore, because there were no records reflecting any change in the location of the collateral file or that the original note had been lost, SPS concluded that Leu & Okuda continued to maintain possession of the original Note.

(Emphasis added.)  See Deutsche Bank Nat'l Tr. Co. v. Bass, No. CAAP-20-0000501, 2024 WL 4287149, at *3 (Haw. App. Sept. 25, 2024) (SDO) (noting that the declarant "did not attach the [s]ervicer's business records or otherwise establish the [s]ervicer's regularly-conducted business activities and record-keeping practices which might evidence" the servicer's business practice).

contents of the Fed Ex package, which bears the return address for "Chase Custody Services." Although U.S. Bank produced a May 8, 2009 "Release Transmittal" referencing "WEBB DONOVAN" as the "borrower," that document does not mention the Note. There thus remains a genuine question of material fact as to whether the Note was transmitted to Leu & Okuda, such that Leu & Okuda, which was "unable to locate" the Note in July 2019, in fact had the Note to lose or destroy.

Moreover, there is no declaration, affidavit, or other evidence establishing that, upon JPMorgan Chase's transmittal of the collateral file to Leu & Okuda in May 2009, Leu & Okuda held the contents of the collateral file *on behalf of U.S. Bank*.[6] This raises a genuine question of material fact as to whether U.S. Bank was the person "in rightful possession of the instrument and entitled to enforce it when loss of possession occurred," pursuant to HRS § 490:3-309.

As explained <u>supra</u>, there remain genuine questions of material fact – questions of whether the Note was in fact transmitted to Leu & Okuda in May 2009 and lost or destroyed sometime between May 2009 and January 2017, and of whether Leu &

---

[6] Leu represents that JPMorgan Chase retained Leu & Okuda's legal services in March 2009, a month before the Note was assigned to U.S. Bank. Although Leu refers to JPMorgan Chase as the "servicer" for U.S. Bank, there is no declaration, affidavit, or other evidence establishing that JPMorgan Chase had the authority to retain Leu & Okuda on U.S. Bank's behalf in March 2009, which was **prior to** U.S. Bank's assignment of the Note.

Okuda was "in rightful possession" of the Note on behalf of U.S. Bank at the time it was purportedly lost or destroyed. These questions implicate U.S. Bank's standing to enforce the Note at the time the complaint was filed. Reyes-Toledo, 139 Hawaiʻi at 368, 390 P.3d at 1255 ("[A] foreclosing plaintiff does not have standing to foreclose on mortgaged property unless the plaintiff was entitled to enforce the note that has been defaulted on.") (citation omitted).

We therefore conclude that the circuit court erred in granting summary judgment in favor of U.S. Bank. We vacate the Order and Judgment, and remand for further proceedings consistent with this summary disposition order.

DATED: Honolulu, Hawaiʻi, March 31, 2025.

Keith M. Kiuchi,
for Defendant-Appellant.

Lisa K. Swartzfager,
for Plaintiff-Appellee.

/s/ Karen T. Nakasone
Presiding Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge