**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-24-0000553**
**19-MAY-2026**
**07:57 AM**
**Dkt. 88 SO**

NO. CAAP-24-0000553
(CONSOLIDATED WITH NO. CAAP-25-0000492)


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I


THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK AS
TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS, INC., ASSET
BACKED CERTIFICATES, SERIES 2005-AB1, Plaintiff-Appellee, v.
JEFFREY T. PECK, Defendant-Appellant,
and
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. SOLELY AS
NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., Defendants-Appellees,
and
JOHN DOES 1-50, JANE DOES 1-50, DOE PARTNERSHIPS 1-50,
DOE CORPORATIONS 1-50, DOE ENTITIES 1-50, AND DOE GOVERNMENTAL
UNITS 1-50, Defendants.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CC131000307)


SUMMARY DISPOSITION ORDER
(By: Nakasone, C.J., and Leonard and Wadsworth, JJ.)

These consolidated appeals arise from a judgment and
two-post judgment orders entered by the Circuit Court of the
First Circuit[1] (**Circuit Court**) in a foreclosure action. The
action was brought by Plaintiff-Appellee The Bank of New York
Mellon fka The Bank of New York as Trustee for the
Certificateholders of CWABS, Inc., Asset Backed Certificates,
Series 2005-AB1 (**BONYM**) against Defendant-Appellant Jeffrey T.
Peck (**Peck**) and other defendants.

---

[1] The Honorable James H. Ashford presided.

In appellate case no. CAAP-24-0000553, Peck appeals from the Circuit Court's: (1) July 31, 2024 *Findings of Fact and Conclusions of Law; Order Granting [BONYM's] Renewed Motion for Summary Judgment and for Interlocutory Decree of Foreclosure Filed January 3, 2024* (**Foreclosure Decree**); and (2) July 31, 2024 *Judgment* entered in favor of BONYM and against all defendants. Peck raises multiple points of error, some of which overlap, some of which are indiscernible, and some of which improperly incorporate by reference arguments made in the Circuit Court.[2/] Peck contends, among other things, that the Circuit Court erred in granting BONYM's January 3, 2024 renewed motion for summary judgment (**MSJ**) because: (1) BONYM "lack[ed] standing per [Bank of America, N.A. v. Reyes-Toledo (Reyes-Toledo I), 139 Hawaiʻi 361, 390 P.3d 1248 (2017)]"; (2) BONYM lacked standing because it "failed to prove by competent evidence that it was the current Trustee for the certificateholders of CWABS, Inc. Asset-Backed Certificates, Series 2005 AB1"; and (3) "Peck's liability on the promissory note [(**Note**)] was discharged in his bankruptcy in 2010[.]"

In appellate case no. CAAP-25-0000492, Peck appeals from the Circuit Court's: (1) June 16, 2025 *Order Denying . . . Peck's Motion for Reconsideration of the Rental Portion of the Court's 27 September 2024 Stay Order* (**Order Denying Reconsideration of Stay Order**); and (2) June 17, 2025 *Order Granting [BONYM's] Motion to Lift Order Granting . . . Peck's Motion for a Stay of the 31 July 2024 Judgment & the Findings of Fact, Conclusions of Law & Order Granting [BONYM's] Renewed Motion for Summary Judgment & for Interlocutory Decree of Foreclosure Filed 3 January 2024; and to Cancel Any Sale of the Subject Property, Filed on September 27, 2024 (As Modified)* (**Order Lifting Stay**). Peck contends that the Circuit Court erred: (1) in denying Peck's October 7, 2024 motion for

---

[2/] We disregard these "incorporate[d]" arguments. See Kapiolani Commercial Ctr. v. A & S P'ship, 68 Haw. 580, 584, 723 P.2d 181, 184-85 (1986) (disregarding arguments made to trial court incorporated by reference in appellate brief); Dennis Tsugio Nagata, D.D.S., Inc. v. Wong, No. CAAP-21-0000718, 2025 WL 1203482, at *6 (Haw. App. Apr. 25, 2025)(SDO) (same).

reconsideration of the homeowner's insurance portion of the Circuit Court's September 27, 2024 stay order (**Stay Order**) (**Motion for Reconsideration of Stay Order**); and (2) in granting BONYM's May 5, 2025 motion to lift the Stay Order (**Motion to Lift Stay**).

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Peck's contentions as follows, and affirm.

## I. CAAP-24-0000553

### A. Standing to Enforce the Note

Peck contends that finding of fact (**FOF**) 18 and conclusions of law (**COL**s) 1 through 5 in the Foreclosure Decree are erroneous because BONYM lacked standing to enforce the subject Note "per [Reyes-]Toledo I." Specifically, Peck appears to argue that BONYM failed to prove that it possessed the Note when the foreclosure complaint was filed on February 4, 2013. He also appears to challenge the assignment of the subject mortgage (**Mortgage**) to BONYM,[3] and argues relatedly that BONYM failed to prove that it was the current trustee of the trust that owns the Mortgage.

We review the grant of summary judgment de novo. U.S. Bank, N.A. v. Mattos, 140 Hawaiʻi 26, 30, 398 P.3d 615, 619 (2017); see Hilo Bay Marina, LLC v. State, 156 Hawaiʻi 478, 487, 575 P.3d 568, 577 (2025) ("findings of fact made by a trial court in relation to a summary judgment ruling are not binding on appeal, nor do they alter our *de novo* standard of review regarding a summary judgment ruling"). A foreclosing plaintiff must establish its standing to enforce the subject promissory note when the complaint was filed. See Reyes-Toledo I, 139 Hawaiʻi at 368, 390 P.3d at 1255. A person entitled to enforce the note includes the "[h]older," defined in this context as "the

---

[3] The Circuit Court found in FOF 6: "The Mortgage [was] assigned to [BONYM] pursuant to an Assignment of Mortgage recorded on May 4, 2011, in the Bureau as Document No. 2011-072847."

person in . . . [p]ossession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]" Hawaii Revised Statutes (**HRS**) §§ 490:1-201(b), 490:3-301 (2008). A foreclosing plaintiff may establish it is the holder of the note by showing that its agent physically possessed it. See U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust v. Verhagen, 149 Hawaiʻi 315, 327-28, 489 P.3d 419, 431-32 (2021).

Here, BONYM asserted in the MSJ that it was the holder in possession of the Note, indorsed in blank, at the time the complaint was filed on February 4, 2013. To support this assertion, BONYM submitted several declarations, including those of Tiffany Vose (**Vose**) and Tramelle Martise Thomas (**Thomas**).

Vose made her declaration as "a Vice President in the Document Custody Department of The Bank of New York Mellon Trust Company, N.A., formerly known as The Bank of New York Trust Company, N.A. (**'BNYMTC'**), which serves as Custodian of the Trust known as CERTIFICATEHOLDERS OF CWABS, INC., ASSET BACKED CERTIFICATES, SERIES 2005-AB1 (the **'Trust'**) and the Trust's trustee, THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK." (Emphasis added.) Vose stated the following regarding possession of the Note:

> 4. I have reviewed the Mortgage File Records [regarding Peck's **Loan**]. These records were: (l) created and maintained in the ordinary course of BNYMTC's business as Custodian; (2) created contemporaneously with the occurrence of any act, transaction, or event described in the records or within a reasonable time thereafter; and (3) created by individuals with personal knowledge of the act, transaction, or event described in the records. Attached hereto as Exhibit 1 is a true and correct copy of a screenshot of a portion of the Mortgage File Records maintained by BNYMTC that I reviewed pertaining to the Loan (the "Mortgage File Record Screenshot"). The Mortgage File Record Screenshot attached as Exhibit 1 is a BNYMTC business record reflecting the activity of the collateral file which contained the original Note dated March 3, 2005 ("Note").

> 5. According to the Mortgage File Record Screenshot, on or about April 7, 2005, BNYMTC received the collateral file containing the original Note. Upon receipt by BNYMTC, the collateral file containing the original Note was placed in a secure file room for safekeeping. My personal knowledge of these statements is derived from my having reviewed the Mortgage File Record Screenshot attached as Exhibit 1 which reflects that the collateral file

4

> containing the original Note was "Deposit[ed]" with BNYMTC on or around April 7, 2005.
>
> 6. BNYMTC maintained continuous physical possession of the collateral file containing the original Note from its date of receipt until on or about June 18, 2019, when it was shipped to the master servicer of the Loan, Bank of America. My personal knowledge of these statements is derived from my having reviewed the Mortgage File Record Screenshot attached as Exhibit 1 which reflects that the collateral file containing the original Note was "Release[ed]" from BNYMTC on or around June 18, 2019.

(Emphases omitted.)

Exhibit 1 appears to be a one-page printout of a screenshot related to the Peck Loan. The body of the screenshot shows a highlighted "Activity" tab, followed by several column headings and 26 rows of entries under the columns. The column headings include "Trans. Date" and "Trans. Descr." Vose appears to describe the following entries in her declaration:

| Trans. Date | . . . | Trans. Descr. |
|---|---|---|
| . . . | . . . | . . . |
| 06/18/2019 | . . . | Release (Int. to Ext.) |
| . . . | . . . | . . . |
| 04/07/2005 | . . . | Deposit |

On appeal, Peck acknowledges Vose's assertion that BNYMTC received the collateral file containing the Note on April 7, 2005, but argues "[t]hat again proves that [BONYM] did not possess the note and the mortgage . . . when the case was filed on 4 February 2013."[4/]

Based on the information contained in the screenshot, however, Vose also concluded that "BNYMTC maintained continuous physical possession of the collateral file containing the original Note from its date of receipt until on or about June 18, 2019, when it was shipped to the master servicer of the Loan, Bank of America." (Emphasis added.) Vose explained that the June 18, 2019 "Release" entry on the screenshot evidences that the Note was "'Release[ed]' from BNYMTC on or around" that date.

Thomas made her declaration as an Assistant Vice President of Bank of America, National Association (**BANA**),

---

[4/] Peck does not appear to challenge the admissibility of BONYM's documentary evidence that it possessed the Note.

stating that BANA and its predecessors by merger, Countrywide Home Loans Servicing LP and BAC Home Loans Servicing, LP, serviced the Loan from its origination date on or about March 3, 2005, until the Loan was transferred for servicing to Shellpoint Mortgage Servicing on or about March 16, 2015. Thomas confirmed that BONYM maintained physical custody of the original Note from March 31, 2005, until June 21, 2019, and that the Note was indorsed in blank prior to September 18, 2011."[5] Thomas explained in detail the attached records supporting her statements.

We conclude that the declarations submitted by BONYM with its MSJ were sufficient to establish its possession, through its custodian BNYMTC, of the original Note when the complaint was filed on February 4, 2013. In particular, the Vose Declaration and attached activity screenshot show that BONYM possessed the Note continuously for the roughly 14-year period from April 2005 until June 2019. See Wells Fargo Bank, N.A. as Tr. for Certificateholders of Soundview Home Loan Tr. 2007-OPT1, Asset-Backed Certificates, Series 2007-OPT1 v. Flores, No. CAAP-22-0000736, 2025 WL 662791, at *3 (Haw. App. Feb. 28, 2025) (concluding that standing was established where the relevant declaration and attached activity report confirmed Wells Fargo's "physical possession of the Note from February 14, 2007 until August 8, 2014[, which] included the date, August 20, 2013, on which the Complaint was filed.").[6] BONYM thus satisfied its

---

[5] Thomas explained that "[o]n September 18, 2011, BANA received evidence of BONY[M]'s physical possession of the original indorsed in blank Note through BANA's receipt of an electronic image of the original, indorsed in blank Note made by BONY[M]."

[6] BONYM's submitted evidence distinguishes this case from Deutsche Bank Nat'l Tr. Co. as Tr. for Morgan Stanley ABS Capital I Inc. Tr. 2006-NC4 v. Yata, 152 Hawai'i 322, 526 P.3d 299 (2023). In Yata, the supreme court ruled that the documentary evidence submitted by the foreclosing mortgage assignee was insufficient to establish its standing where the "certification" regarding possession of the note predated the filing of the complaint by nearly nine months and a declaration and exhibit supporting note possession "did not establish Deutsche Bank's possession of the [n]ote before or after it filed the [c]omplaint . . . ." Id. at 336, 526 P.3d at 313. Here, in contrast, the Vose declaration established that BONYM possessed the Note continuously for an extended period that encompassed the filing date of the complaint. And unlike the declarant in Yata, Vose explained where the

(continued...)

initial burden on summary judgment.

The burden then shifted to Peck, who did not show there was a genuine issue of material fact as to BONYM's physical possession of the Note on February 4, 2013.  See U.S. Bank Tr., N.A., as Trustee for LSF9 Master Participation Trust v. Verhagen, 149 Hawaiʻi 315, 328, 489 P.3d 419, 432 (2021).

Further, under Hawaiʻi law, BONYM's possession of the Note entitled it to foreclose the Mortgage, as the transfer of a blank-indorsed promissory note also transfers the right to enforce the mortgage.  See HRS § 490:9-203(g) (2008) ("The attachment of a security interest in a right to payment or performance secured by a security interest or other lien on personal or real property is also attachment of a security interest in the security interest, mortgage, or other lien."); Reyes-Toledo I, 139 Hawaiʻi at 371 n.17, 390 P.3d at 1258 n.17 (stating that "the security follows the debt") (citations omitted).  Peck's challenge to the Mortgage assignment and BONYM's trustee status cannot undo its standing in these circumstances.[7/]

Accordingly, we conclude that BONYM established standing to bring its foreclosure action, and the Circuit Court did not err in so ruling.

## B.  Peck's Bankruptcy

Peck contends that his "liability on the . . . [N]ote was discharged in his bankruptcy in 2010," and "therefore [BONYM] is not entitled to enforce the [N]ote . . . ."  He provides no authority or discernible argument supporting his apparent

---

[6/]  (...continued)
supporting screenshot came from and how to interpret the relevant "deposit" and "release" dates.

[7/]    In any event, Peck did not raise a genuine issue of fact regarding the 2011 assignment of the mortgage to BONYM.  He argues that it was invalid because the original lender, Countrywide Home Loans, Inc. (**CHLI**), "ceased to exist in July of 2008."  But CHLI did not execute the assignment; Mortgage Electronic Registration Systems, Inc. (**MERS**) did.  The Mortgage states that MERS is the "nominee for Lender [CHLI] and Lender's successors and assigns." (Emphasis added.)  Peck did not show that MERS's assignment of the Mortgage to BONYM was invalid.

position that this bankruptcy discharge deprived BONYM of standing, or otherwise extinguished its right, to foreclose the Mortgage. His argument is deemed waived. See HRAP Rule 28(b)(7).

## C. Remaining Arguments

Peck summarily asserts that FOFs 5, 6, 8, 9, 10, 12, 13, 14, 16, and 20 are erroneous. Because he presents no supporting argument, his challenge to each of these FOFs is waived. See HRAP Rule 28(b)(7).

Peck contends that the Circuit Court erred in "denying [his] motion to file a counterclaim"; "denying [his] HRCP Rule 54(b) motion on denying his motion to file his counterclaim"; and "denying [his] discovery motion." He presents no discernible argument supporting a conclusion that the Circuit Court abused its discretion in denying any of these motions. See HRAP Rule 28(b)(7). We cannot so rule.

## II. CAAP-24-0000492

Addressing Peck's contentions regarding the Order Denying Reconsideration of Stay Order and the Order Lifting Stay requires a brief review of the relevant procedural background.

On August 21, 2024, Peck filed a motion to stay the Judgment and the Foreclosure Decree in the Circuit Court. Following a September 24, 2024 hearing, the Circuit Court granted the motion. In its September 27, 2024 Stay Order, the Circuit Court stayed the foreclosure proceedings during the pendency of Peck's appeal on the following conditions, among others: (1) Peck "must immediately pay when due all real property taxes related to the Property[,]" (2) Peck "must maintain and keep in full force and effect homeowner's insurance on the Property[,]" and (3) "Peck must protect [BONYM] against the loss of rental income" by, no later than November 1, 2024, either (a) "[p]ost[ing] and maintain[ing] a bond in the amount of $271,512.00 during the appeal[,]" or (b) [d]eposit[ing] the amount of $5,656.50 per month, by the 1st business day of each

month, with the Clerk of the Court." (Formatting altered.)

On October 3, 2024, Peck filed the Motion for Reconsideration of Stay Order, by which he sought reconsideration of the rental portion of the Stay Order. Peck argued that it was "more realistic and reasonable for him to pay" the monthly amount of $3,395.00, because that amount "is the average of current rent being paid in the location of Peck's home." In a November 6, 2024 minute order,[8] the Circuit Court denied the motion as follows:

> A motion for reconsideration should only be considered if it presents new evidence or arguments that could not have been presented during the earlier adjudicated motion. A motion for reconsideration should not be used to re-litigate old matters. <u>Sousaris v. Miller</u>, 92 Hawaiʻi 505, 513, 993 P.2d 539, 547 (2000). As the Court previously indicated at the hearing on . . . Peck's Motion to Stay, [BONYM] provided reliable evidence of the monthly rental value of the subject property in its Opposition to the Motion to Stay, and . . . Peck did not avail himself of the opportunity to address that issue or offer reliable contrary evidence in the Reply.

However, the court extended the November 1, 2024 deadline for posting the bond or making the first $5,656.50 payment to November 15, 2024. In a separate November 6, 2024 minute order, the court also granted Peck's request to file proof of insurance no later than November 8, 2024.

Meanwhile, on November 4, 2024, Peck filed a motion to stay the Judgment and the Foreclosure Decree in this court. He requested that this court allow the subject property to serve as security in lieu of a supersedeas bond. We denied the motion on the ground that Peck "fail[ed] to demonstrate that the Property is adequate substitute security."

On May 5, 2025, BONYM filed the Motion to Lift Stay. BONYM argued that Peck had failed to meet the conditions set forth in the Stay Order, as modified. Following a June 3, 2025 hearing, the Circuit Court granted the motion, as stated in the Order Lifting Stay.

On appeal, Peck first contends that the Circuit Court erred in denying his Motion for Reconsideration of Stay Order.

---

[8]   The court later entered the nearly identical Order Denying Reconsideration of Stay Order.

He argues that he should have been "allow[ed] . . . to pay to the Clerk of the Court monthly the sum of $3395 in lieu of a bond to stay this proceeding . . . ."

As the Circuit Court indicated, BONYM provided "reliable evidence of the monthly rental value of the subject property in its Opposition to the Motion to Stay[.]" Peck then failed to address the issue or offer alternative evidence in his reply. And on appeal, Peck offers no argument addressing this failing. On this record, we conclude that the Circuit Court did not abuse its discretion in entering the Order Denying Reconsideration of Stay Order.

Peck next contends that the Circuit Court erred in granting BONYM's Motion to Lift Stay. He argues that the Circuit Court lacked jurisdiction to lift the stay while his appeal in CAAP-24-0000553 was pending before this court. He also argues that "it was impossible for him to comply with the [November 6, 2024] Minute Order . . . because he could not file proof of insurance within 2 days after the Minute Order was filed."

The Circuit Court had jurisdiction to enter the Order Lifting Stay, which determined a matter collateral or incidental to the Judgment. See Chun v. Bd. of Trs. of Emps.' Ret. Sys. of State of Haw., 106 Hawaiʻi 416, 430 n. 13, 106 P.3d 339, 353 n. 13 (2005) ("Notwithstanding the general effect of the filing of a notice of appeal (*i.e.*, divesting the trial court of jurisdiction over the appealed case), the trial court retains jurisdiction to determine matters collateral or incidental to the judgment, and may act in aid of the appeal." (brackets omitted) (quoting TSA Int'l Ltd. v. Shimizu Corp., 92 Hawaiʻi 243, 265, 990 P.2d 713, 735 (1999))).

We further conclude that the court did not abuse its discretion in entering the November 6, 2024 minute order, which granted Peck's request to file proof of insurance no later than November 8, 2024.

### III. Conclusion

For the reasons discussed above, we affirm the following, entered by the Circuit Court: the July 31, 2024

10

Foreclosure Decree, the July 31, 2024 Judgment, the June 16, 2025 Order Denying Reconsideration of Stay Order, and the June 17, 2025 Order Lifting Stay.

DATED:  Honolulu, Hawaiʻi, May 19, 2026.


On the briefs:                          /s/ Karen T. Nakasone
                                        Chief Judge
R. Steven Geshell
for Defendant-Appellant.                /s/ Katherine G. Leonard
                                        Associate Judge
Leila M. Rothwell and
Justin S. Moyer                         /s/ Clyde J. Wadsworth
(Aldridge Pite, LLP)                    Associate Judge
for Plaintiff-Appellee.